## UNITED STATES *v.* BOWEN.

1. The Revised Statutes of the United States must be accepted as the law on the subjects which they embrace as it existed on the first day of December, 1873. When their meaning is plain, the court cannot recur to the original statutes to see if errors were committed in revising them, but it may do so when necessary to construe doubtful language used in the revision.

2. Sect. 4820 of the Revised Statutes admits of no other reasonable construction than that only the invalid pensioners who had *not* contributed to the funds of the Soldiers' Home were bound to surrender to it their pensions while receiving its benefits. There is no occasion, therefore, to look at the pre-existing law on the subject.

APPEAL from the Court of Claims.

Charles Bowen filed in the court below his petition alleging that the United States unlawfully withheld from him $270, being the amount due him from Sept. 13, 1876, when he was admitted as an inmate of the "Soldiers' Home," to Dec. 4, 1877, upon his pension theretofore granted, by reason of a wound received by him in the military service of the United States.

That court found the following facts : —

1. The claimant was a private in Company B, Third Regiment United States Infantry, from the 9th of March, 1861, to the 9th of March, 1864, and during that time, under the provisions of sect. 7 of the act of March 3, 1859 (11 Stat. 434), there was deducted from his pay the sum of $4.57.

2. An invalid pension was granted to him March 13, 1865, at $8 per month, commencing March 9, 1864, by certificate No. 39,050; the monthly rate of such pension was increased from $8 to $15, Jan. 21, 1867, to commerce June 6, 1866; and from $15 to $18, July 8, 1876, to commence June 4, 1872.

3. On the 13th of September, 1876, he was admitted as an inmate of the Soldiers' Home, and his pension from that date to the 4th of December, 1877, to wit, the sum of $264.60, was regularly paid to the treasurer of that institution.

The court found as a conclusion of law that the claimant should recover the sum of $264.60. Judgment in his favor having been rendered therefor, the United States appealed.

The fifth section of the act entitled " An Act to found a military asylum for the relief and support of invalid and disabled soldiers of the army of the United States," approved March 3, 1851 (9 Stat. 595), provides " that any pensioner on account of wounds or disability incurred in the military service, although he may not have contributed to the funds of the institution, shall be entitled to all the benefits herein provided, upon transferring his pension to said asylum for and during the period that he may voluntarily continue to receive such benefits."

The act of March 3, 1859, making appropriations for the support of the army for the year ending June 30, 1860 (11 id. 431), changes the name of the institution to " Soldiers' Home," and the sixth section declares that " all pensioners, on account of wounds or disability incurred in the military service, shall transfer and surrender their pensions to the institution, for and during the time they may remain therein, and voluntarily continue to receive its benefits."

Sect. 4820 of the Revised Statutes provides that " the fact that one to whom a pension has been granted for wounds or disability received in the military service, has not contributed to the funds of the Soldiers' Home, shall not preclude him from admission thereto; but all such pensioners shall surrender their pensions to the Soldiers' Home during the time they remain therein and voluntarily receive its benefits."

*The Attorney-General* for the United States.

The whole controversy arises from interpolating in the Revised Statutes " such " between " all " and " pensioners," where the latter words occur in the sixth section of the act of March 3, 1859; and its determination depends upon the answer to the inquiry, Did the revision of the statutes repeal the law requiring an inmate of the Soldiers' Home, who had contributed twelve and a half cents per month during his service, to transfer his pension to the institution, or did Congress merely intend to incorporate in them the then existing law?

The appellee contends that " such " works so manifest a change in the antecedent law, that the declared intent of the revision, namely, to " revise and consolidate the statutes in force on the 1st of December, 1873," is not to be regarded,

and that it is not of any importance what had been the settled law by clear expressions in the statutes for fourteen previous years. The appellant submits that these considerations, together with the otherwise rigid adherence in the chapter of the Revised Statutes entitled the "Soldiers' Home," to the language, chronology, and provisions of the antecedent law, demonstrate that the revisers only attempted to collate, and that Congress did not mean to change, the law as it stood at that date.

Spencer, J., in *Taylor* v. *Delancy*, 2 Cai. (N. Y.) Cas. 149, discussing the revision of 1801, lays down the following rule: " Where the law antecedently to the revision was settled, either by clear expressions in the statutes, or adjudications on them, the mere change of phraseology shall not be deemed or construed a change of the law, unless such phraseology evidently purports an intention in the legislature to work a change."

This rule was approved and adopted by Kent, himself one of the revisers of 1801, in *Yates's Case* (4 Johns. (N. Y.) 317, 359); and it has received the indorsement of 'all the courts which have considered the question. *Burnham* v. *Stevens*, 33 N. H. 247; *Ash* v. *Ash*, 9 Ohio St. 383; *Conger* v. *Barker*, 11 id. 1; *Croswell* v. *Crane*, 7 Barb. (N. Y.) 191; *Ennis* v. *Crump*, 6 Tex. 34; *Dominick* v. *Michael*, 4 Sandf. (N. Y.) 374; *Goodell* v. *Jackson*, 20 Johns. (N. Y.) 722; *Theriat* v. *Hart*, 2 Hill (N. Y.), 380; *Hoffman* v. *Delihanty*, 13 Abb. (N. Y.) Pr. 388; *In re Brown*, 21 Wend. (N. Y.) 316; *Allen* v. *Ramsey*, 6 Metc. (Mass.) 635.

It was competent, therefore, for the appellant to examine the prior statutes, to determine whether a radical change in them was intended by Congress by the insertion of the word in question.

*Mr. Matt. H. Carpenter*, contra.

The chapter of the Revised Statutes, entitled "The Soldiers' Home," in which sect. 4820 is found, was evidently intended as the only provision to regulate and govern that institution, and to repeal all existing laws relating thereto. Covering their whole subject, and embracing all that was intended to be preserved of them, it becomes a complete law in itself, providing every thing necessary to the perfect management and discipline of the "Soldiers' Home." Such is the natural inference

from its general character and particular provisions, and it leaves no room for doubt as to the intention of its framers. It therefore repeals all former statutes on the same subject. *Ellis* v. *Page*, 1 Pick. (Mass.) 45; Smith, Comm. on Stat. Constr., sects. 785, 786; *Boucicault* v. *Hart*, 13 Blatch. 52; *Holmes* v. *Wiltz*, 11 La. Ann. 446; *United States* v. *Hammond*, 2 Woods, 203; *Jones* v. *Smart*, 1 Tenn. 44.

That section is expressed in clear, concise, and intelligible language, leaving nothing for interpretation or conjecture, and the construction for which the appellee contends has been uniformly given to it by the Commissioner of Pensions, who is charged with the duty of executing its provisions. His interpretation, to use the language of the court in *United States* v. *Moore* (95 U. S. 760), is "entitled to the most respectful consideration, and ought not to be overruled without the most cogent reasons."

It is unnecessary, however, to contend that the prior statutes are repealed by implication, for sect. 5596 repeals them in express terms. It declares, that "all acts of Congress passed prior to said first day of December, one thousand eight hundred and seventy-three, any portion of which is embraced in any section of said revision, are hereby repealed, and the sections applicable thereto shall be in force in lieu thereof."

MR. JUSTICE MILLER delivered the opinion of the court.

This is an appeal from a judgment of the Court of Claims in favor of appellee for $264.60, for pension money withheld by the government.

The action of the government officers in that respect was founded on their opinion that Bowen, who was cared for in the Soldiers' Home, belonged to the class who, by sect. 4820 of the revision, surrendered their pensions while inmates of the home. That section enacts that "the fact that one to whom a pension has been granted for wounds or disability received in the military service has not contributed to the funds of the Soldiers' Home, shall not preclude him from admission thereto. But all such pensioners shall surrender their pensions to the Soldiers' Home during the time they remain there and voluntarily receive its benefits."

Bowen was the recipient of an invalid pension but *he had* contributed to the funds of the Soldiers' Home, and the single question in the case is whether that fact withdraws him from the clause which requires pensioners to surrender their pensions to the home while inmates of it.

If the qualifying word *such* is restricted to pensioners described in the sentence which immediately precedes it, then Bowen does not belong to that class, and is not bound to surrender his pension. There is no other class of pensioners described in that section to whom the word *such* can refer than those who have not contributed to the funds of the home, and Bowen does not belong to that class. The history of the institution affords good reason for that interpretation. The Soldiers' Home was bought and built, and is supported now very largely, by money deducted from the monthly pay of the soldiers of the regular army. But there is a class of persons who have received wounds in the military service, or incurred ill health while in such service, from whose pay no deduction was made as a contribution to the home, who received pensions as invalids, and, by virtue of this section, are entitled to be cared for at that place. There is a manifest propriety in a rule which requires of this class that, when supported out of the fund to which they did not contribute, their pensions should go to increase that fund; while those who have been giving of their monthly pay for years should receive its benefits when they come to need them, without giving also the pension which is the bounty of a grateful government. There is no antecedent use of the word "pensioners" in the chapter of which sect. 4820 is a part, and which embraces the legislation of Congress concerning the Soldiers' Home, to which the word *such* can refer, but the immediately preceding sentence in the same section. If the construction claimed by counsel for the government be correct, that word is useless, for it would express the idea with precision by reading, "But all pensioners shall surrender their pensions to the Soldiers' Home during the time they remain therein and voluntarily receive its benefits." The question, therefore, is whether we shall read the section "all pensioners" or "all *such* pensioners."

The word, however, as there used, has an appropriate reference to the class of pensioners who have not contributed to the funds of the institution, and no sound canon of construction will authorize us to disregard it, when to do so changes very materially the meaning of the section.

It is urged in opposition to this view that as the law stood prior to the revision, as shown by the act of March 3, 1859 (11 Stat. 431), *all* invalid pensioners who accepted the benefit of the home were bound to surrender to its use their pensions while there; and it must be conceded that such was the law.

But, as the revision embraces that act as well as all others on the subject, it is, by the express language of the repealing clause, sect. 5596, no longer in force. Counsel for government, admitting that it is no longer in force, independently of the section of the revision which we are called on to construe, insist that a resort may be had to the law which was the subject of revision, to interpret any thing left in doubt by the language of the revisers.

This principle is undoubtedly sound; and, where there is a substantial doubt as to the meaning of the language used in the revision, the old law is a valuable source of information. The Revised Statutes must be treated as the legislative declaration of the statute law on the subjects which they embrace on the first day of December, 1873. When the meaning is plain, the courts cannot look to the statutes which have been revised to see if Congress erred in that revision, but may do so when necessary to construe doubtful language used in expressing the meaning of Congress. If, then, in the case before us, the language of sect. 4820 was fairly susceptible of the construction claimed by the government, as well as of the opposite one, the argument from the provision of the statute as it stood before the revision would be conclusive. But, for the reasons already given, we are of opinion that the reasonable force of the language used in that section, taken in connection with the whole of the chapter devoted to that subject, and the accepted canons of interpretation, leave room for no other construction than that only invalid pensioners who had *not* contributed to the funds of the Soldiers' Home

were bound to purchase its benefits by surrendering to it their pensions.

As the Court of Claims acted on this construction, its judgment is

*Affirmed.*