*637 OPINION.
Davis, J.,
delivered tlie opinion of the court:
The claimant is a first lieutenant in the Marine Corps. In February, 1877, he was attached to the Trenton and sailed to join the European squadron. There he was detached from the Trenton and attached to the Marion. His sea service on both vessels amounted to 1,001 days. ■ The Claim is for commutation for one per diem sea ration during this period. The decision of the case rests entirely upon the construction of the Revised Statutes, and neither involves a general principle of law nor special considerations of equity towards the claimant. If the statute gives the claimant what he demands, it is our -duty to award it to him notwithstanding adyerse decisions at the Treasury and adverse practice at the Navy. Department. If it does, not clearly give it to him, there are no equitable reasons why we should strain a construction of the acts .favorable to his claims.
The Army of the United States is a body fixed in numbers, both as to its officers and its enlisted men. (Rev. Stat., § 1094.) No one not included in the list enumerated in the statute is a part of the Army, subject to its discipline, or entitled to be paid out of the ordinary appropriations for. it.
In like manner the Navy is a fixed body (Rev. Stat., § 1362), with its own discipline and its own annual appropriations.
The Marine Corps has an organization distinct from either. (Rev. Stat., §§ 1596-1623.) In arranging the Revised Statutes the sections relating to this corps stand in a separate chapter under Title XY, entitled “ The Navy”; but we are to draw no conclusion from this fact, for the Revised Statutes further say:
Sec. 5600. The arrangement and classification of the several sections of the revision have been made for the purpose of a more convenient and orderly-arrangement of the'same, and, therefore, no inference or presumption of a legislative construction is to he drawn by reason of the title under which any particular section is placed.
In its daily discipline the Marine Corps is subject to the laws and regulations established for the government of the Navy (Rev. Stat., § 1621); but the statutes also contemplate that it may be detached for service with the Army (ib.), as in fact it has frequently been, and it may be put on duty in forts and garrisons. (Rev. Stat., § 1619.) In such times it is to be subject *638 to the rules and articles of war prescribed for the government of tlie Army (Rev. Stat., § 1021), and is 'to receive from Army officers quartermaster’s stores (Rev. Stat., § 1135) and subsistence (Rev. Stat., § 1143). When serving with the Navy it receives these supplies from naval officers. (Naval Regs., §§ 1304, 1320.) Marines serving with the Navy and borne upon the books of the ship share in prize-money (Rev. Stat., § 4630); all fund in the Treasury (Rev. Stat., § 4752), members of the corps may claim to participate in the prize and in the distribution of pensions they are classed with seamen (Rev. Stat., § '4728); but the officers of the corps are classed with the officers of the Army in that distribution. (Rev. Stat., § 4095.)
The pay of this corps is .regulated by the laws which govern the pay of the Army, and as changes are made in the Army pay, those changes take effect simultaneously in the pay-roll of the Marine Corps. This is the legal effect of section 1612 of the Revised Statutes, which reads as follows:
The officers of the Marine Corps shall be entitled to receive the same pay and allowances, and the enlisted men shall be entitled to receive the same pay and bounty for re-enlisting, as are, or may be, p>rovided by or in pursuance of law for the officers and enlisted men of like grades in the infantry of the Army.
Thus it appears that the Marine Corps is an independent-corps, officered like the Army; ordinarily placed by law under the Secretary of the Navy and ordinarily subject to Navy discipline; liable at the pleasure of the President to be put with the Army and made subject to Army discipline; when serving with the Navy a part of the naval force, or, as the Supreme Court say in Wilkes v. Dinsman (7 How., 124), ‘‘while employed on board public vessels, persons in the naval service, persons subject to the orders of naval officers, persons under the government of the Naval Code as to punishment, and persons amenable to the Navy Department”; and wherever serving to be paid according to the laws governing the pay of the Army, as those laws are or may become.
The pay of an Army officer of the rank of the claimant is thus fixed by the Revised Statutes:
Siso. 1261. The officers of the Army shall be entitled to the pay herein stated after their respective designations * * * First lieutenant, not mounted, fifteen hundred dollars a year.
Seo. 1269. No allowances shall be made to officers in addition to their pay as hereinafter provided.
*639 'The allowances to officers referred to in section 1269 are set forth in sections 1270, 1271, 1272-, and. 1273, and relate to fuel, quarters, forage, and mileage. Commissioned officers of the Army are not allowed rations, although they are allowed to the non-commissioned officers and'enlisted men. (Rev. Stat., § 1293.) The only advantage which the commissioned officer has in this respect is the .right to purchase rations for his own use .at cost when serving in the field. (Rev. Stat., § 1145.)
These provisions are decisive of this controversy, unless the ■claimant’s further contention can be maintained, viz, that he is •one of the officers referred to in section 1578 of the Revised ■Statutes, which provides that—
All officers shall be entitled to one ration, or to commutation therefor, while at sea, or attached to a sea-going vessel.
Section 1578 is part of chapter 8 of title XY, and is entitled a Pay, emoluments, and- allowances.” Any conclusion which may be drawn from the arrangement and classification in this ■chapter of provisions regulating the payment of officers of the Navy and the arrangement and classification in another chapter in the same title of the provisions regulating the payment of officers in the Marine Corps is hot precluded by section 5600 above cited. That section is only aimed at conclusions drawn from an arrangement and classification under a particular title. The difference between the two cases is manifest, and there .are obvious reasons why the Legislature might wish to provide against conclusions in the one case and permit them to be drawn in the other. The only pay and emoluments which chapter 8 provides for are the pay and emoluments of "‘the comrnis•sioned officers and warrant officers'on the active list of the Navy of the United States, and the petty officers, seamen, ordinary seamen, firemen, coal-heavers, and employés in the Navy.” Such is the enumeration in section 1556, at the head of the chapter. That section, after thus enumerating the several classes ■of persons who are to be paid salaries, proceeds to provide how much each one in each class is to receive while at sea, while on shore duty, and while on leave or waiting orders. Section 1557 then provides for the rate of pay of officers on furlough; and then section 1558 enacts as follows:
The pay prescribed ia the two preceding sections shall be the full and entire compensation of the several officers therein named, and no additional .allowance shall be made in favor of any of said officers on any account ■■whatever, except as hereinafter provided.
*640 Passing down and through the chapter to see what allowances to officers are thereinafter provided, we find in section 1560 a provision for mileage allowance to “officers in the naval service” on foreign stations and an allowance for transportation of baggage to “officers traveling in foreign countries under orders”; in section 1578 an allowance of one ration or the commutation therefor to “all officers * * * while at sea or attached to a sea-going vessel,” and no other allowance whatever.
By a sound grammatical construction, these allowances to-officers relate to the officers referred to in section 1558 — that is, to the officers of the Navy enumerated in section 1556 — and. are the additional allowances provided for in section 1558. In order to authorize their extension to officers not enumerated in section 1556, the intent of Congress to do so should be clear and unmistakable. But Congress, instead of indicating such a purpose, has, by placing in chapter 8 the enactment relating to the pay of naval officers, and in chapter 9 the enactments regulating the pay of officers of the Marine Corps, indirectly but unmistakably indicated its intent to confine to the-naval officers whose pay is fixed by the provisions of chapter 8 the allowances made by that chapter.
In order to counteract the effect of this, the claimant asked us to find, as we have found, that the accounting officers of the-Treasury have invariably construed section 1563 of the Revised Statutes as applying to marine officers. ¡ That section forms part of chapter 8, on pay, emoluments, and allowances, and authorized the President to direct advances to be made to persons in the naval service employed on distant stations.
It will be observed that a new term is here introduced. The-statute-no longer speaks of “ officers,” but of “persons employed in the naval service.” It makes the same distinction-which the Supreme Court made in Wilke v. Dinsman when it said:
Though marines are not, in some senses, “seamen,” and their duties are in some respects different, yet they are, while employed on board public vessels, persons in the naval service.
In view of this language of the Supreme Court, we think that Congress intended to give to marines the benefit of the legislation in section 1563; but whether this be so or not, the Executive construction of this section is entitled to no more. *641 weight in this court than the contrary Executive construction of section 1558.
As the sections of the Revised Statutes in question are thus found tp be free from all reasonable doubt, we have no real occasion to follow the counsel in his ingenious examination of the statutes which preceded the codification. (Bowen v. United States, 100 U. S. R., 508.) Nevertheless we will briefly do so, in order to show that before the enactment of the Revised Statutes, as well as now, the allowances to a first lieutenant of marines were identical with the allowances to a first lieutenant of infantry, and had no relation whatever to allowances to officers of the Navy.
The allowances erf rations to officers of the Navy, prior to the Revised Statutes, were fixed by the “Act to regulate the pay of the Navy of the United States,” passed March 3, 1835 (4 Stat. L., 755), wherein it was provided that one ration per day only shall be allowed to all officers when attached to vessels for sea service; by the Act of March 3,1851 (9 Stat. L., 621), which enacted that no person, not actually attached to and doing duty on board a sea-going vessel, and the petty officers, ■ seamen, and ordinary seamen attached to the ordinary navy-yards, shall be allowed a ration; by the Act of July 28, 1866, giving a ration to midshipmen (14 Stat. L., 322), and by the Act of February 28, 1867, granting one to cadets (14 Stat. L., 416). These acts clearly related only to officers of the Navy, and did not relate to officers of the Marine Corps. The Act of July 15, 1870, which made new provisions as to the amounts of naval officers’ pay, expressly excepted rations from its operation (16 Stat. L., 332), leaving the old statutes still in force.
The Act of June 30, 1834 (4 Stat. L., -712), reorganized the Marine Corps. Section 5 provided—
That the officers of the Marine Corps shall be entitled to and receive the same pay, emoluments, and allowances as are now or may hereafter be allowed to officers in the infantry of the Army, except the adjutant and inspector, who shall be entitled to the same pay, emoluments, and allowances as are received by the paymaster of said corps.
The number of rations allowed to a lieutenant of infantry at that time was as follows: By the Act of 1802 (2 Stat. L., 133), two rations, and by the Act of March 2, 1827 (4 Stat. L., 227), one ration. The accounting officers seemed to have refused to allow to marine officers the additional ration granted in 1827, *642 on June 30, 1834 (4 Stat. L., 718), Congress enacted tkat , should receive it.
This continued to be the law down to July 15, 1870, when Congress reorganized the pay-rolls of the Army, and enacted the sum allowed should be “in full of all commutations of quarters, fuel, forage, servants’ wages and clothing, longevity rations, and all allowances of every name and nature whatever.”
Thus it appears that Congress, in 1870, continued the previous allowance of rations to officers of the Navy, but took it away from officers of the Army and of the Marine Corps. Such of these previous provisions of law as were in force when Revised Statutes were enacted are to be found there almost the very language of the original acts. *
The provision of the Act of 1835, respecting a single ration naval officers at sea or attached to sea-going vessels, is found in section 1578. In the Act of 1835 it clearly relates only to officers of the Navy. In the Revised Statutes we have already held that it relates as clearly only to officers of the Navy.
The provision of the Act of 1834, that officers in the Marine Corps are to receive the same pay, emoluments, and allowances as are or may be allowed to infantry officers, is codified in section 1612 without change. Under its provisions a first- lieutenant of the Marine Corps, from 1834 to 1870, was entitled on a sea-going vessel to three rations, while a naval officer was entitled to but one. After the Act of 1870 he was entitled to no rations, while the right of naval officers to receive them continued.
The provisions of the Act of 1870 taking away the allowances are to be found in section 1269.
Thus, on the claimant’s own theory, it is demonstrated that he has no case for a recovery. An application of principles and a train of reasoning similar to that which governed the Supreme Court in its decision in the case of The United States v. Freeman (3 How., 556), must govern us now and lead us to hold that the claimant is upon the same footing as a first lieutenant of infantry as to rations, which is one form of allowances.
The claimant has called our attention to the fact that he has no right of appeal from an adverse judgment, and has urged this upon us in view, also, of the fact that this is a test case,, as a reason why, if we have any doubt, we should give him the *643 to listen to this suggestion, as we liave already in similar oases, if we felt any doubt; but having entire confidence in our conclusions, it is our duty to take tlie responsibilities which the law puts upon us of deciding not only the claimant’s case, but the rule of law for the guidance ■of the Departments and accounting officers in similar cases.
claimant’s petition be dismissed.