Weldon J.,
delivered the opinion of the court:
This case was tried at the present term and a judgment rendered against the claimants. The motion is made, to reverse our former determination, upon the ground, that the court was mistaken, in its view of the law.
*333 The suit is based directly on tbe provisions of an act entitled “An act to increase the water supply of the city of Washington, and for other purposes, ” passed July 17, 1882,. and found in the Statutes at Large, page 168. It is also insisted by counsel for the claimants, that upon the general principles of the law, applicable to the appropriation of private property for public use, there is a liability on the part of the defendants, for the grievance complained of; and established by the findings.
The facts are briefly as follows : The claimants, before and at the time, it is alleged the defendants did the acts complained of, were the owners in fee of lot No. 11 of the original lot No. 2 of the subdivision made by the heirs of John Little of parts of tracks called “James Park” and “Mt. Pleasant,” a? corded in book “Gov. Shepherd, 107 and 170.” On the 21st of August, 1883, the said lot, was used and occupied by the claimants, as a place of residence, having on it a valuable and enduring well of water. On said date, proceedings were begun by the publication of a notice, under the act aforesaid,. to condemn a right of way, for a tunnel in the neighborhood, and near said premises. The defendants afterward constructed such tunnel, by blasting and digging, at a depth of 150 to 170 feet below the surface, in the immediate neighborhood of said property, and about 500 feet from said well.
In consequence of the construction of said tunnel, the said well became dry, and has so remained. The tunnel so constructed, was in pursuance to the plan of improvement contemplated by the provisions of said statute, providing, as aforesaid, for the water supply to the city of Washington. Said well at the time of its destruction was 60 feet deep, and it does not. appear that it was supplied by a distinct vein of water.
The first section of said act, in one of its clauses provides as follows:
“Any person or corporation having any estate or interest in any of the lands embraced in said survey and map, who shall for any reason, not having been tendered payment therefor as above provided, or who shall have declined to accept the amount tendered therefor, and any person who by reason of the taking of the said land, or by the construction of the works hereinafter directed to be constructed shall be directly injured in any property right, may, at any time within one year from the publication of notice by the Attorney-General as above provided, file a *334 petition in the Court of Claims of the United States setting forth his right of title and the amount claimed by him as damages for the property taken or the injury sustained; and the said court shall hear and adjudicate such claims in the same manner that other claims against the United States are now by law directed to be heard and adjudicated therein : Provided, That the court shall make such special rules in respect to such cases as shall secure their hearing and adjudication with the least possible delay.”
The land, in which the well in controversy was situated, is not embraced in the survey and map, prepared under the provisions of said law.
It is insisted, that the claimants do not come within the terms of the statute, for the reason the property affected is not embraced in the map and survey ; and that they have no claim under and within the general jurisdiction of the court. Inasmuch as these objections, go to the power to maintain the suit, it is proper that they should be disposed of as preliminary to the discussion of the rights of the parties on the merits of the claim.
It will be observed, that the terms of the law, contemplate two distinct classes of claimants; those whose lands are taken and appropriated by the construction and occupation of the tunnel, and those whose “property right” shall be “directly injured ” by the construction of the works. And further, in providing for a jurisdiction in this court, the statute says:
“ Any such person may at any time within one year from the publication of said notice, by the Attorney-General, as above provided, file a petition in the Court of Claims of the United States, setting forth his right of title and the amount claimed by him as damages for the property taken or the injury sustained.”
The terms of the statute, are sufficiently comprehensive, to embrace not only claims for damages, growing out of the physical taking or trespass to property, but also, all damages, which might result, from the construction and location of the tunnel, which could be considered, at common law consequential, and not immediate, unless limited by the term “ directly injured.”
Since the former decision, and the very able arguments on the motion for a new trial in this and in other cases of a like kind, the Court has reexamined the questions arising on the *335 statute, and tlie authorities affecting tlie rights of the parties.
Having determined that the statute is sufficiently broad to give the court jurisdiction of damages, arising outside of the survey and map, the question remaining for us to decide is, do the facts constitute a cause of action on the part of the petitioner, for which a recovery can be had in this proceeding. The discussion in this connection is limited to the effect of the statute. What rights does the statute give the claimants; and what liabilities, has it placed on the defendants. Ordinarily it is safe to assume, that Congress in the passage of a law does not intend, that the United States, should assume a greater liability, than attaches to a transaction of. the same kind, between individuals; but this is a general rule, to which there are exceptions. Carroll v. United States (22 C. Cls. R., 104).
That was a suit, under a law of Congress giving the court jurisdiction, to determine the amount of damages incident to the improvement of the streets of Washington, by the District of Columbia; and in the decision of the cause, the court said : ‘•The doctrine is indisputable that a municipal corporation is not liable to an adjoining owner for consequence incident to the improvement of the street so long as there is uo encroachment on the possession of the owner and the corporation is guilty of no negligence,” yet the court held both on demurrer, and in the trial of the cause, that Congress had waived the exemption of the district by the terms of the statute. So in this case, it may be, that for the grievance complained of, there would be no liability against an individual, or a private corporation, yet by the terms of law, Congress may have recognized, such a liability on the part of the defendants.
In the case of Oumming, it was held by the Supreme Court, that the statute did not waive the exemption of the United States, from responsibility for the torts of public officers; but simply intended to submit to the adjudication of the court, the question of liability, and the extent of the damages. But the opinion, on that question was by a divided court. (Cumming v. United States 130, U. S. 452.)
In the absence of a provision or implication to that effect, it is safe to conclude, that Congress in the passage of the law, did not intend, that the United States should assume towards *336 the claimants, greater liability than would attach to an individual or ordinary corporation, who as adjoining owner, had done in effect, what was done by the defendants.
We have examined many decisions of different courts, upon the question of liability of the owners of land, who in the enjoyment of their estate, have affected the interest of the adjoining owners, and do not find, a uniformity of opinion on that subject.
In the view which we now take of the question involved in the controversy, it is not necessary, that we should pass upon the question, of what at common law, would be the rights and liability as between individuals, upon the facts of this case.
Eliminating from the discussion, the question whether upon the facts there would be a liability against a person or ordinary corporation, we come to consider the rights of the parties under the provisions of the statute, conferring jurisdiction on the court, to hear and determine the alleged cause of action, because of the construction of the tunnel.
The statute provides that “ any person who by reason of the talcing of the said land, or by the construction of the works hereinafter directed to be constructed shall be directly injured in any property right” may file his petition in this court.
The facts found by the court, establish that the claimants well was destroyed by the construction of the tunnel, and the only question for us to decide is, can the damages be recovered against the United States, in this proceeding. In our first view of this case, we held that the word “ direct,” intended to discriminate against consequential damages, and for that class of damage, no liability attached to the defendants. In the reconsideration on the motion for a new trial, we have more thoroughly considered the phraseology of the statute upon the question of damages.
There is no doubt as to the injury, but it is the consequential consequence of the construction of the tunnel; and not the immediate result, of any force, used directly against the property rights of the claimants. Consequential damages are as directly traceable to a cause as are immediate; but as they do not follow immediately, they are classified as consequential. The term “direct damages” which would be the result of “directly injured” is not a classification known to the law, in the division of the different kinds of damages. If the words “ directly *337 injured ” are used in the statute in contradistinction to “ remotely injured” then the right to the claimants to recover is clear.
The rule which Axes the limit of compensation, in cases where positive injury results from alleged wrong, prohibits any allowance for damages, remotely resulting from the principal illegal act.
“ Such damages are frequently termed remote damages and sometime consequential damages. These terms are not however necessarily synonymous, orto be indifieren tly used; all remote damages are consequential, but all consequential are by no means remote.” (Sedgwick on the measure of Damages, VoJ I, page 90.)
Consequential damages are defined to be “ Those which though directly are not immediately consequential upon the act or default complained of” (Bouv., Law Die page 467). The term consequential, relates more particularly to the point of time, rather than to the relation, with the illegal act complained of, as the cause of the injury.
This distinction, is made more clearly, in the law applicable to the subject of pleading, in the distinction between trespass, and trespass on the case.
In our former decision, we regarded the word “direct” as a- limitation upon the subject of damages; and as intending to discriminate against, what at common law, would be consequential, and not immediate damages.
The damages proved in this case, are not immediate upon the act or default complained of, but are they not direct, within the meaning of the statutes ?
The words, “ directly injured” must have been intended by the legislature, to perform some function of limitation, or qualification, upon .the character of damages, which might -be claimed, as resulting from the work contemplated by the statute.
“The good expositer” says Lord Coke, “makes every sentence have its operation to suppress all the mischief; he gives effect to every word in the statute ; he does not construe it so that anything should be vain and superfluous, nor yet makes exposition against express words.” (Dwarris on Statutes, 577.)
“ In the Bowen Case, (14 C Cls. R, 173), affirmed on appeal (100 U. S., 508) this court held that the introduction into a section of the Revised Statutes of the single word ‘such’ which *338 was not in tlie original act, there revised and reenacted completely changed the law, and that decision was affirmed by the Supreme Court Fisher v. United States 15, C Cls, 327.”
Although the authorities are well settled, that for damages remotely incident to the illegal act, there can be no recovery, yet we are induced to the conclusion, that in the use of the term udirectly injured” Congress intended, to legislate against the claims for damages, not directly traceable to the construction of the work authorized by the terms of the law.
The use of the land embraced in the line of the tunnel was a most extraordinary use, the the bottom of the tunnel being 170 feet below the surface near the premises of the claimants, and it is not at all remarkable, that the well of the claimants shduld suffer as it did, as the direct result of the construction of the tunnel. The facts stated in the findings, clearly show, that the destruction of the well, is directly traceable to the excavation of the ground for the purpose of the tunnel.
From' the reexamination of the question of the liability of the defendants, for damages which are unquestionably the result of their acts, we determine, that Congress intended to limit the responsibility of the defendants, against such damages, as might be' remotely connected with the work contemplated by the act, and not against consequential injury, which might directly result from the prosecution of the work.
As to whether the defendants, would be liable in this case, under that provision of the constitution, protecting private property from public appropriation, without compensation to the owners as contended by claimants, is not necessary for us to determine; it is sufficient for the present purpose, that we hold, that under the statute upon which this claim is based, parties injured in the way shown by the findings, have a right to" compensation.
The-motion for a new trial will be granted and as the allowance of motion opens the whole case — the parties will be heard upon the question of damages, on such proof as may be offered.