Minshall, J.
At the October term 1890, of the Court of Common Pleas of Columbiana county, John W. Long was indicted for selling intoxicating liquors to certain persons in said county, on the 18th day of September, 1890, at a time when an agricultural fair was being held by The Salem Fair and Exposition Company, and within two miles of the place where the fair was so held. The defendant entered a plea of not guilty, and a trial was had. At the conclusion of the* evidence of the state, the court, on motion of the defendant, directed the jury to return a verdict of not guilty, which was done accordingly.
The prosecuting attorney excepted to the ruling of the court, and tendered a bill of exceptions containing all the evidence offered by the state, which was signed by the court and made a part of the record.
*510 The bill of exceptions shows that evidence was offered by the state tending to show that sales of intoxicating liquors were made by the defendant within two miles of the place where the Salem Fair and Exposition was then being held as charged in the indictment; and that The Salem Fair and Exposition Company was incorporated January 31, 1890, under the provisions of section 3235, Revised Statutes, with a capital stock of $10,000, divided into shares of $25 each, with its location and place of business at Salem, Columbiana county, Ohio. The certificate states that, “ The purpose for which this corporation is formed is to provide, maintain and manage grounds for the exhibition of farm and fancy stock, together with domestic animals of all kinds, agricultural, horticultural, mechanical and industrial products of every description, including works of art. Also for speeding horses, giving exhibitions of riding and driving, and such other displays as will conduce to the interest and entertainment of the community, for profit.”
The ground upon which the court directed a verdict for the defendant is, that the company being organized for profit under the provisions of the section above referred to, is not an agricultural fair within the meaning of section 6946, under which the indictment was framed; that this section applies only to sales made within the distance named of such state, district, county and township agricultural fairs as are provided for in the chapter on “ agricultural corporations,” Revised Statutes, p. 926.
The language of the section, 6946, on which the indictment is framed, is, “ Whoever sells intoxicating liquors..... within two miles of the place where any agricultural fair is being held,” shall be punished as therein provided. It is true that the primary, and ‘we may say the etymological meaning of the word “ fair,” simply embraces a market for the buying and selling of such articles as may be exhibited; but, it is also true, that it is now more generally used to designate an exposition where the industrial products of a people are exhibited as a display of the success, workmanship and art of the exhibitors, and to obtain such premiums *511 as may be paid by the owners of the fair as a reward of excellence. So that the Salem Fair and Exposition falls within the usual and ordinary acceptation of the word “fair,” as used in the statute.
The argument, however, of the defendant that such construction should not be placed on it, is based upon a review of the history of legislation upon the subject. The Salem Fair is a private corporation organized for profit under the provisions of section 3235, Revised Statutes, authorizing individuals to incorporate for any purpose that they may lawfully associate, except for dealing in real estate, or carrying on professional business. The provisions of this section were first incorporated into our statutes by the revision of 1880; so that prior to this time, as claimed, there were no private agricultural fairs organized for profit, as the Salem company now is; and the only fairs known to our statutes were such state, district, county and township fairs, as "were provided for in the various statutes collected and codified in the chapter of the revision above referred to. So that the offense of selling intoxicating liquors, made punishable by section 3 of the act of 1856, to protect fairs and fair grounds, (S. & C. 68,) was of necessity, as well as by its language, confined to sales made “ within two miles of the place where any such agricultural fairs” were held; and, therefore, that section 6946 of the revision, being, as claimed, simply a codification of the provisions of the criminal law on the subject, then in force, should not be extended to fairs organized as the Salem company is.
Here it should be observed, in the first place, that the act of 1856, (S. & C. 67,) punishing sales of liquor within two miles of a fair ground, was made applicable to “ any independent agricultural society ” as well as to state, county and township organizations — manifesting a purpose to extend its provisions to all such societies then existing, irrespective of the mode of their organization. And no reason appears why such should not have been the policy of the state. Certainly the same inconvenience and annoyance will result to the individual and the public from the sale of liquor near a fair *512 ground, however the fair itself may be organized; for whether organized upon one plan or another, it will be attended and patronized in the same community by substantially the same persons. And we take it that the policy of the statute is founded on the duty of protection to the people who attend such fairs, rather than to the fair itself. Again this section of the Revised Statutes has been amended a number of times since 1880 — the last amendment having been made in 1888 ; and at each time the language, “ any agricultural fair ” was inserted and continued in the amendment, although many fair companies organized as the Salem Company is organized, are known to have existed throughout the state at the time of each amendment.
But independent of these considerations, the construction claimed is inadmissible. The language of the statute is free from any ambiguity, and therefore precludes any construction contrary to the plain import of its terms. “ Any agricultural fair,” must include all agricultural fairs, or none, for there is nothing in the statute by which any distinction can be taken as between such fairs. This section was under consideration in Heck v. State, 44 Ohio St. 536. It was then claimed, in an argument based upon the provisions of the prior statute, that the section did not apply to one whose place of business is permanently located within the distance named of any fair. In answer to which it was said, “ when the language used in a revised statute is of such doubtful import as to call for construction, it is both reasonable and usual to refer to the statute or statutes from which the revision has been made. But where the language is plain, and leads to no absurd or improbable results, there is no room for construction, and it is the duty of the courts to give it the effect required by the plain and ordinary signification of the words used, whatever may have been the language of the prior statute, or the construction placed upon it.” The authorities are there cited, and the principle laid down, is shown to be in conformity to the rule adopted by the federal supreme court in construing the Revised Statutes of the United States. United States v. Bowen, 100 U. S. 508.
*513 It is true that the commission was simply appointed to revise, and not to change the statutes of the state. Their report was, however, made to the legislature. That body, without criticism of the manner in which the work had been performed, adopted the revision with a few changes, and made it, as far as it went, the statute law of the state, to be construed as any other act of the legislature. And it is a settled rule of construction that, whatever aids may be invoked for that purpose, the sense of the legislature must in all cases be collected from the language employed in the statute, in accordance with the maxim, sermo index animi. And from which this further rule results as a corollary, that where the language is plain and unambiguous, and leads in its application to no absurd or improbable results, there is no room for construction. As sometimes said, the courts cannot be called on, nor have they the power, to construe that which does not need construction.
Therefore, the common pleas, as we think, erred in taking the evidence from the jury and directing a verdict for the defendant. If any of the terrible consequences that seem to be apprehended from this construction are likely to occur, application can be made to the legislature, which will soon be in session, when a remedy can be had by amendment.
Exceptions sustained.'