Francis Duplisea, Petitioner
for Writ of Habeas Corpus

*vs.*

John H. Welsh, Warden.

Knox.   Opinion, April 13, 1944.

*C. S. Roberts,* for the petitioner.

*Frank I. Cowan,* Attorney General,

*Nunzi F. Napolitano,* Assistant Attorney General, for the State.

SITTING: STURGIS, C.J., THAXTER, HUDSON, MANSER, MURCHIE, CHAPMAN, J. .

Chapman, J., dissenting in part.

MURCHIE, J. The petitioner herein is confined in the State Prison under a warrant of commitment showing the imposition of a sentence of not less than 8 years, nor more than 16, following his conviction of the crimes of assault with a dangerous weapon with intent to steal, and larceny. The issue raised relates exclusively to the propriety of that penalty as punishment for the assault. The petitioner asserts that he is now unlawfully imprisoned because the offense charged was not recognized as anything more than an assault at common law and has never been constituted as more in this State by legislation duly enacted, wherefore the maximum penalty to which he might have been subjected when sentence was imposed was 5 years. R. S.(1930), Chap. 129, Sec. 27. It is admitted that with proper time allowances for good behavior a 5 year term, figured from the date of his commitment, would have been fully served prior to the filing of the petition.

The case comes to this Court on exceptions to a ruling below that the sentence was a valid one under R. S. (1930), Chap. 129, Sec. 24. Exceptions lie to secure review in habeas corpus proceedings, *Holbrook, Petitioner*, 133 Me., 276, 177 A., 418, but there can be no doubt of the propriety of the action sought to be reviewed unless, as contended, that statute is inoperative as relating to assault with intent to steal. The language therein, defining the offenses for which its penalty is imposed, has remained unchanged since the statutory revision of 1857, wherein Chap. 118, Sec. 25 uses identical wording. The recitals in that early revision consolidated the provision of R. S. (1841), Chap. 154, Secs. 29 and 30, which dealt separately with assaults when armed with a dangerous weapon in the one case, and when not so armed in the other. Changes in the phrase-

ology by which the offenses had been earlier described are unimportant since they carry identic meaning.

R. S. (1930), Chap. 129, Sec. 24 declares, as did R. S. (1841), Chap. 154, Sec. 29, that assault by one armed with a dangerous weapon with intent to murder, kill, maim, rob or steal, or to commit arson or burglary, is punishable by imprisonment for a maximum term of 20 years. In the 1841 statutes the following section related to such assaults when not so armed, and the annotations to the two sections purport to show that Section 29 presented a consolidation of the 1821 Statutes, Chap. 2, Secs. 5 and 6, and Chap. 7, Sec. 9, while the next did the same with Chap. 2, Sec. 6 and Chap. 7, Sec. 11 of said Statutes and P. L. 1836, Chap. 241, Sec. 1.

If nothing more than the laws referred to in the annotations were to be regarded, there would be ground for the claim that our present Sec. 24 of Chap. 129 has no foundation in legislation. The section in the 1841 revision to which it traces back imposed imprisonment for not more than 20 years as punishment for assault with a dangerous weapon with intent to commit any of the crimes stated. The 3 sections of the 1821 Statutes to which its annotation refers related only to such assaults when the intent was to murder, to maim, or to rob, and the punishments thereby imposed, disregarding solitary confinement which was eliminated in all three cases by P. L. 1827, Chap. 368, Sec. 3, carried the 20 year maximum only where the intent was to murder or to rob. When the intent was to maim the maximum was 4 years.

That part of the pertinent statute which traces back to R. S. (1841), Chap. 154, Sec. 30, is not presently involved, but it may be noted that while it deals exclusively with assaults not involving a dangerous weapon, two of the annotated sections deal only with such assaults. The 1836 law referred to imposed a penalty for assault with intent to murder without reference to arms.

The provisions of R. S. (1930), Chap. 129, Sec. 24, like those of R. S. (1841), Chap. 154, Sec. 29, cover a wider range of criminal intent than the three sections of earlier law to which the annotator referred, but so far as intent to kill is concerned, Chapter 6 of the 1821 Statutes, which dealt with burglary, shows by comparison of Sections 1 and 4 how the gravity of a crime was considered to be aggravated if committed by one armed with a dangerous weapon. Both sections treat intent to kill, to rob or to steal identically, and Chapter 7 not only links the offenses of robbing and stealing in more than one instance, but in Sections 9 and 11 presents duly enacted legislation dealing with assaults by one armed with a dangerous weapon with intent to rob in the former and steal in the latter. Section 11 is shown in the annotations to the 1841 Statutes as furnishing a part of the historical background for Chap. 154, Sec. 30, where a maximum penalty of 10 years, without reference to solitary confinement disposed of in 1827, was imposed for assault unarmed, with intent to steal.

No case heretofore has presented the issue to this Court whether the word "steal" was properly written into the particular section of the 1841 revision. The same is true as to the word "kill," although cases involving assault with intent to murder or to kill carry clear recognition that the two offenses are separate and distinct from each other, the former being of a higher grade and including the latter. To refer to only one such case, *State* v. *Waters*, 39 Me., 54, declaration was made that an assault with intent to kill, as distinguished from one with intent to murder, was not recognized as a crime at common law, but had been made so in this State by statute. This may likewise be said of assault with intent to steal when made by one armed with a dangerous weapon, Statutes 1821, Chap. 7, Sec. 11. That it was consolidated with others in the process of statutory revision, that in the process the penalty was increased, or that simultaneously a new offense of assault when not armed was written into the statute without foundation in

express legislative enactment, presents no warrant for declaration that one convicted of it should not be punished within the limits of the maximum penalty imposed. The offense punishable under R. S. (1930), Chap. 129, Sec. 24, is assault with any one of several specified intents, aggravated when committed by one armed with a dangerous weapon. Of such an offense the petitioner was charged, tried and convicted. Denial of his petition in the Superior Court was proper.

*Exceptions overruled.*

CHAPMAN, J., dissenting in part.

I concur in the conclusion reached in the above opinion, but do not believe that the discussion of the statutes enacted previous to the statute under which the indictment was drawn, to be necessary or helpful. Rather, I believe that to base the interpretation of the statute under which the indictment was drawn, in whole or in part upon the previous enactments, is to establish a precedent in violation of the universally accepted rule that, when the language of a statute and the purpose sought are clear, the court will not go beyond the terms thereof for its interpretation.

The indictment charged the defendant with assault with intent to steal while armed with a dangerous weapon. The statute reads as follows:

"Whoever assaults another with intent to murder, kill, maim, rob, steal, or to commit arson or burglary, if armed with a dangerous weapon, shall be punished by imprisonment for not less than one year, nor more than twenty years;"

I see no reason why the Legislature that put into our Revised Statutes, Section 24 of Chapter 129, could not make it a

crime to commit an assault with intent to steal while armed with a dangerous weapon and impose the penalty provided, irrespective of what any previous Legislature had seen fit to do. It attempted to do this in words that are as well understood by the common laborer as the college professor and which have no legal meaning different from their common usage.

Endlich on Interpretation of Statutes, Section 51, says:

"As to codifications and revisions, which, upon a principle that will hereafter become manifest, are held, in general, to repeal enactments covered by their provisions, it is, no doubt, true, that, like the Revised Statutes of the United States, they must be accepted as the law upon the subject they embrace, as it existed when the Revision or Code went into force, and that, consequently, when their meaning is plain the Court cannot recur to the original statute to see if errors were committed in revising them."

To the same effect is *United States* v. *Bowen*, 100 U. S., 508, 25 L.Ed., 631; *Arthur* v. *Dodge*, 101 U. S., 34, 25 L.Ed., 948; *Vietor* v. *Arthur*, 104 U.S., 498, 26 L.Ed., 633.

In the latter case the court said:

"In *United States* v. *Bowen* (100 U. S., 508), we held that the Revised Statutes must be treated as a legislative declaration of what the statute law of the United States was on the 1st of December, 1873, and that when the meaning was plain the courts could not look to the original statutes to see if Congress had erred in the revision. That could only be done when it was necessary to construe doubtful language."

59 Corpus Juris 1098 says upon this subject:

"So where the meaning of the language of a revision or code is plain and unambiguous, it must be construed without resort to the original statutes which have been brought into it;"

Of particular application is *Bent* v. *Hubbardston*, 138 Mass., 99. This case holds squarely that:

> "When there is substantial doubt as to the meaning of the language used in the Public Statutes, the statutes as they previously existed afford, therefore, a most valuable guide in their construction. But when language is clear, we cannot look to the earlier statutes to see if an error has been made by the Legislature in its understanding of them, as there is then no room for the office of construction." . . . .
> "Even if the meaning it has affixed to the earlier statutes is different from that we should attribute to them, that which it has adopted, if clearly expressed by the Public Statutes, is controlling. If the language of the statute, as it now exists, were susceptible of two constructions, an argument drawn from the statute as it was formerly expressed (should we adopt the meaning given to it by the plaintiff) would be conclusive. *United States* v. *Bowen,* 100 U. S., 508." . . . .
> "In this view, we do not deem it necessary to consider what is the proper construction of the statutes as they existed before the enactment of the Public Statutes."

Our own court said in *Estabrook* v. *Steward Read Co. et al.,* 129 Me., 178, 151 A., 141, 144:

> "In interpreting and construing the statutes the first consideration is to ascertain and give effect to the intention of the Legislature, but when the language is plain and unambiguous and conveys a clear and definite meaning, there is no occasion to resort to the rules of statutory interpretation and construction, and the statute must be given its plain and obvious meaning."

It is true that the statutes discussed in the opinion do not disclose anything that is at variance with the interpretation to be given it according to the plain meaning of the terms; but

the opinion, by seeking "foundation in legislation" in interpreting the statute and inquiring if the world "steal" was properly written into the statute, definitely becomes a precedent for the principle that although a statute is plain and unambiguous in its terms it will be interpreted in the light of previous enactments, which principle is contrary to general authority.