[No. 1700.]

## CARLTON H. HAND, A. W. McCUNE, R. C. LUND, AND LOUISA FRANK, RESPONDENTS, *v.* JOHN R. COOK, WILLIAM LLOYD, AND JOHN LYNCH, APPELLANTS.

1.  PUBLIC LANDS—OFFENSES—STATUTES. Rev. Stats. U. S. 452, providing that any officer, clerk, or employee in the General Land Office, who directly or indirectly purchases, or becomes interested in the purchase of, any public land, shall be removed from his office, imposes a penalty or forfeiture, and must be strictly construed.

2.  MINES AND MINERALS—PUBLIC MINERAL LANDS—LOCATION AND ACQUISITION OF CLAIMS—PERSONS ENTITLED TO ACQUIRE LAND—STATUTES. Rev. Stats. U. S., 446–449, relating to the General Land Office, provide for the appointment and duties of the various officers in the General Land Office, in the Department of the Interior, including a clerk of the surveys, who shall direct and superintend the making of surveys. Section 452 prohibits the officers, clerks, and employees in the General Land Office from purchasing the public lands, under penalty of loss of employment. Chapter 1, title 32, "The Public Lands," section 2207, provides for the appointment of a surveyor-general. Chapter 6, section 2319, provides that all mineral deposits in lands belonging to the United States are open to exploration and purchase by citizens and those having declared their intention to become citizens. Section 2334 provides that the surveyor-general may appoint in each land district containing mineral lands as many competent surveyors as apply to survey mining claims, who shall be employed by the applicants for whom they do surveying; that the Commissioner of the General Land Office shall have power to establish maximum charges for surveying and publication of notices. *Held,* that a government mineral surveyor appointed under Rev. Stats. U. S., 2334, is not an officer, clerk, or employee in the General Land Office, within Rev. Stats. U. S., 452, prohibiting such persons from obtaining title to government land, and hence is not disqualified thereby from locating a mining claim under Rev. Stats. U. S., c. 1, tit. 32, sec. 2207, providing for such location.

3.  PUBLIC LANDS—DECISIONS OF LAND DEPARTMENT. While the decisions of the land department on matters of law are not binding on courts, they should not be overruled unless they are clearly erroneous.

TALBOT, C. J., dissenting.

APPEAL from the District Court of the Fourth Judicial District of the State of Nevada, Lincoln County; *George S. Brown,* Judge.

Action by Carlton H. Hand, *et al.,* against John R. Cook, *et al.,* to recover possession of certain mining lands and damages for ore extracted therefrom by defendants. From a judgment adverse to the defendants, defendants appeal. **Reversed,** and new trial granted.

*T. J. Osborne, John R. Cook, William Lynch,* and *Powers & Marioneaux,* for Appellants:

I.   We assume the proposition will be universally admitted that every adult male citizen of the United States is presumably capable of acquiring title to any mineral deposits and lands mentioned in section 2319.   The title to all public lands is in the government in trust for its citizens. When lands are thrown open for exploration or purchase no citizen of the United States can with any sort of propriety be constitutionally excluded from the right to purchase.   If one class of citizens might be lawfully deprived of the right to become purchasers of the public lands, it would logically follow that the right to purchase by a process of exclusion or elimination might be conferred to some favored portion of the community, or even to some favored individual.   This would be manifestly inconsistent with the equality of the citizens before the law, to secure which equality is the very end and object of republican institutions and constitutional government.   The right to acquire property is an inherent right of individuals, and government was not instituted among men to abridge, but to conserve and protect, this right.   Certainly and beyond question it cannot be contended, when property has been acquired by a nation or people in their aggregate capacity, and when they conclude to divest their government of such title and vest it in individuals of the nation, that those who represent them in such a government as we enjoy may restrict the capacity to purchase such land to a designated class, or, which is identical in effect, deny the right to purchase to a designated class; and if this cannot be lawfully done, then it inevitably follows that citizens cannot be excluded because they follow a particular vocation or employment.   Regardless of vocation or employment, all citizens are equal before the law, and equally entitled to its benefits and privileges.   It is ordinarily true that one having lands to sell may offer them to whom he will, and that he may exclude from his offer any person or class of persons, but, while this is true of individuals, it does not follow that the same right belongs to the government of the United States.   The public lands are not the absolute

property of the government. They are the property of the citizens. The government is merely a trustee for administration. When it sells or offers to sell the public lands, it cannot justly deny to any citizen the privilege of purchasing. It can only offer the lands for sale by enacting a law. The law can only be enacted by Congress, the representatives or agents of the citizens. To exclude any citizen as a lawful purchaser because of his vocation would be to deprive him of the equal benefit of the law. Such deprivation would be a wholly unwarranted discrimination; and if we were to admit that Congress has power thus to discriminate between the citizens, it must be conceded that to do so is so repugnant to the common sense of justice and so contrary to common right and equality of privilege among the citizens that it will not be presumed that in any given case Congress intended to deprive any citizen of his right to become a purchaser of any public lands which have been offered for sale, unless the intention so to do is by law made so plain that it is beyond dispute.

II. Let us consider for a moment the relation of the parties to each other. The government is engaged in selling lands. For this purpose it establishes a general land office in Washington and employs certain persons to discharge the duties thereof. These persons then become the agents of the government for the sale of its lands. The government is the principal. The principal says to the agent: "You are prohibited from purchasing any of my lands, and if you do so, you shall be discharged." This is the substance of Rev. Stats. U. S., 452. Would a purchase of public lands by an employee in the General Land Office have been valid? We think that the question would turn upon the nature of the duties devolved upon the particular employee by the law. If he were a janitor performing only the duties of a janitor of the building in which the General Land Office is located, we have no doubt that a purchase of public lands by him would have been safe from successful attack by the government. So with a messenger of the department, or a telephone operator, or a stenographer, or a typewriter, or any other employee exercising no discretion in the sale of public lands, and per-

forming merely clerical or manual labor in the land office. Surely it will at least be admitted that a purchase by an employee of that office would not be open to question merely because he was an employee. The nature of his employment and his relation to the government would be a material inquiry, and might or might not enable the government to void a purchase made by the employee. Purchases by some would be voidable, purchases by others would not be voidable, and no purchase by an employee could, upon any admitted principle of law, have been held to be void. The principle to be applied would have been the well-known rule that an agent to sell cannot himself become a purchaser. The principle is elementary. But this principle does not render a purchase by an agent void, but only voidable at the election of the principal. No third person can complain. The title passes, if the forms of law have been observed, and strangers cannot call the transaction in question. The act of the agent is an abuse of authority of which the principal may complain, but it may not be complained of by any other person. (2 Am. & Eng. Ency. Law, 1076, and authorities cited; *Remick* v. *Butterfield*, 31 N. H. 70, 64 Am. Dec. 316; *Jennison* v. *Hapgood*, 19 Am. Dec. 258; *Eastern Bank* v. *Taylor*, 41 Ala. 93; *McKinley* v. *Irvine*, 13 Ala. 681.)

III. A person appointed under the provisions of Rev. Stats. U. S., 2334, is not "an officer, clerk, or employee in the General Land Office." We have set out the provisions of the act of which Rev. Stats. U. S., 452, is a part. It is there seen that the act provides for certain officers, clerks, and employees, and fixes their duties and salaries. They are all employees in the General Land Office. That office is in Washington, D. C. To hold that a surveyor appointed to survey mining claims in the State of Nevada is within the terms of the statute in question, is at the very outset to do violence to its terms. We must first hold that "in" must be construed as meaning the same as "of," and then declare that a surveyor to survey mining claims, while not an employee in the General Land Office, is an employee of that office. But we insist that not even this apparently innocent judicial alteration of the language of the statute is per-

missible. It is a statute which imposes a forfeiture, and is against the common right of the citizen, even when construed to forfeit an office or employment, much more if construed to forfeit the general rights of the citizens to purchase public lands; and being a statute imposing a forfeiture and being against common right and infringing upon fundamental privileges, it must, in accordance with the general rule, be construed strictly, and its terms cannot be extended by implication or construction. We insist that a reading of all the sections of the act entitled "The General Land Office" clearly shows what employees of the government are within the provisions of Rev. Stats. U. S., 452, and "where the language of an enactment is clear and unambiguous, the statute must be held to mean what it clearly expresses, and no room is left for construction. There is no safer or better settled canon of interpretation." (*Swarts* v. *Siegel*, 117 Fed. 13; *Johnson* v. *S. P. Co.*, 117 Fed. 462.)

IV. The duties of a mineral surveyor are exclusively professional and in no sense those of a clerk. He keeps no records or accounts, he registers no act of any superior, he has no custody of public property or papers. His duties consist, when employed by the owner of a mining claim, in making for such owner a survey thereof, showing improvements thereon, with preliminary plat and field notes of survey. When the field notes and preliminary plat of survey have been filed with the surveyor-general his duty in the premises is ended, except it be to correct an error made by him. The final plat of survey, with copy thereof and transcript of field notes, is prepared by the salaried clerks in the surveyor-general's office. Thus it will be seen that the first duties performed by any clerk in the surveyor-general's office or any branch of the land department are performed after the mineral surveyor's work has been completed and he has no part whatever therein. The term "clerk" has a perfectly definite meaning which excludes absolutely one employed as a surveyor or in any other purely professional capacity. Coming now to a consideration of the still more comprehensive term "employee," we find that it also cannot apply to a deputy mineral surveyor. The Century Dictionary thus

defines an employee: "One who works for an employer; a person working for salary or wages, applied to any one so working, but usually only to clerks, workmen, laborers, etc., and but rarely to the higher officers of a corporation or government or a domestic servant." An employee is one who is paid wages as distinguished from salary. (*People* v. *Meyers*, 33 N. Y. 18.)

V. If a mineral surveyor be held to be an employee of the government, then his own assistants employed by him upon the survey are also employees of the government and subject to the prohibition of section 452. The absurd result would follow that nobody could hold a rod or carry a chain in a mineral survey without forfeiting his right to enter public lands. A partial reservation of authority or control in certain respects does not transform the contractor into mere servant. (Wood on Master and Servant, 618; Cooley on Torts, 548; Wharton on Agency, secs. 19, 20.) Thus the requirements that the survey be made in conformity to the general rules of the General Land Office and the instructions of the surveyor-general; that lumber be sawed according to directions given; that a railroad contractor do his work under the supervision and to the satisfaction of the chief engineer, or a builder under the supervision of the architect, or a plumber under the supervision of an official known as the inspector of plumbing—none of these make a contractor a mere employee of anybody. Where a contractor to grade a street "agreed to conform the work to such further directions as should be given by the street commissioner and one of the city surveyors" (which is as full power and authority as is exerted over a deputy mineral surveyor by the surveyor-general or any other officer of the land department), the court held: "This clause in the contract does not in any manner affect the case. It does not constitute Foster (the contractor) any more the immediate agent or servant of the defendant than if the provision were not inserted in his contract." (*Pack* v. *Mayor of New York*, 8 N. Y. 222; *Kelley* v. *Mayor of New York*, 11 N. Y. 432.)

VI. "It would seem that there can be no valid objection to this entry as a matter of public policy, unless it be said

that claimant's position as a deputy surveyor gives him an advantage over the rest of the community in locating claims—in other words, his position gives him special information as regards the places where valuable minerals are to be found. I am not of opinion, however, that this objection should be sufficient to work a forfeiture of an entry already made, or to prevent the making of one." This ruling of the land department remained in full force without any modification until the decision in *Floyd* v. *Montgomery*, 26 L. D. 122. In that case a deputy mineral surveyor was one of several applicants for patents on a mining claim. His interest in the claim was acquired after location and immediately prior to application for patent. He made the survey and prepared and filed preliminary report and field notes with report on improvements. It being urged that he was disqualified by Rev. Stats. U. S., 452, from obtaining patent, the secretary directed that the deputy mineral surveyor's name be stricken from the final certificate, and the entry passed to patent in the name of the remaining applicants, saying on page 136: "In *Herbert McMicken, et al.* (10 L. D. 97, on review 11 L. D. 96), Secretary Noble held that an officer, clerk, or employee in the office of a United States surveyor-general is an officer, clerk, or employee in the General Land Office within the meaning of this section. In *Muller* v. *Coleman* (18 L. D. 394) Secretary Smith held that a deputy surveyor is such an employee, and in the Neill case (24 L. D. 393) the present secretary held that a surveyor-general is within the inhibition so declared. A circular of similar import was issued September 15, 1890 (11 L. D. 348). From an examination of these authorities and a consideration of the language and manifest purpose of the section, it seems clear that its prohibitive provisions embrace a deputy mineral surveyor. In so far as the cases of *State of Nebraska* v. *Dorrington* (2 C. L. L. 647); *Dennison* v. *Willits* (11 C. L. O. 261), and *Lock Lode* (6 L. D. 105) are in conflict with the views expressed in these latter cases they are overruled."

VII. Analysis of the statute and of the departmental regulations relative to deputy mineral surveyors, and of the functions of such persons in relation to the land department

and to those employing them, shows that their status as regards the government of the United States and the land department is that of mere licensees. The government furnishes him no work at any time. It cannot command him to do any work. It cannot accept any service from him. He is simply authorized to act in behalf of applicants for mineral patents in certain of the necessary preliminary proceedings before the land department. The position of a mineral surveyor is entirely similar to that of any attorney practicing before the department. The function of each is the same—to assist an applicant in his proceedings to obtain title to his land from the United States. Each, before he is permitted to act, is required to pass a test of his competency to render such assistance. Each is required by the regulations of the department, though not by statute, to take an official oath. Each then receives an official paper authorizing him so to render service to applicants for patent. Each thereupon makes with the applicant a contract, express or implied, for his compensation—a contract with which the government has nothing to do.

VIII. It may be admitted that the land office has decided that a deputy mineral surveyor is within the prohibitions of the statute under discussion. But we have shown that the department has also decided that he is not within the provisions of that section. But if this court desired to be bound hand and foot by the decisions of the land department, it could not decide this case upon any precedent made by that office, for to decide this cause it is necessary to decide not only whether the mineral surveyor is within the provisions of the law, but, if the court decides that he is, it must then determine the consequences as applied to the facts of this case. The land department furnishes no precedent for a decision of this point. It is true that it has rejected an application for patent made by a mineral surveyor, and received one, too, as we have shown; but the rejection of an application for patent is not a decision that a location of the ground for which patent is sought is void, so that it may be treated as a nullity by all the world. It is the duty of the land department to reject the application of

an alien for patent to mineral ground, but we have fully
shown in this brief that the circumstances that an alien may
not obtain a patent does not render a location made by him
a nullity; but, on the contrary, his location is valid, and
effectually withdraws the ground from subsequent location
by a citizen. So that the fact that the land department has
rejected as well as received a mineral surveyor to become a
patentee of mineral lands, determines nothing as to the
validity or invalidity of a location made by him.

*F. R. McNamee*, for Respondent:

I. The duties of the commissioner as to surveys are, in
the language of the statute, done through the offices of the
surveyor-general, and these offices are branches or integral
parts of the central office, and, as stated by Secretary Noble:
"I am of the opinion that section 452 of the Revised Statutes
by the substitution of the general words used therein for the
special prohibition contained in prior legislation on the sub-
ject was intended to extend the disqualification to acquire
public lands to officers, clerks, and employees in any of the
branches or arms in the public service under the control and
supervision of the commissioner in the discharge of his
duties relating to the survey and sale of the public land.
Moreover, in construing a statute, it is proper to take into con-
sideration the mischief it was passed to obviate. (Sedwick,
Stat. and Com. Law, 202.) The object of section 452 was
evidently to remove from the persons designated the tempta-
tion and power, by virtue of the opportunities afforded them
by their employment, to perpetrate frauds and obtain an
undue advantage in securing public lands over the general
public, by means of their earlier and readier access to the
records relating to the disposal of, and containing valuable
information as to, such lands. Officers, clerks, and employees
in the offices of the surveyors-general fall clearly within the
mischief contemplated by the statute, and the reason of the
law applies to them with equally as much force as to those in
the central office at Washington. Statutes and regulations of
this kind are based upon grounds of such public policy, and
their strict enforcement is essential to the public service.

(*Muller* v. *Coleman,* 18 L. D. 394; *Neill Case,* 24 L. D. 393; *Frank A. Maxwell,* 29 L. D. 76; *Alfred Baltzell, et al.,* 29 L. D. 333.)"

II. In *Manuel* v. *Wulff,* 152 U. S. 505, Chief Justice Fuller, speaking for the court, says: "By section 2322 it is provided that when such qualified persons have made discovery of mineral lands and complied with the law they shall have the exclusive right to possession and enjoyment of the same. It has, therefore, repeatedly been held that mining claims are property in the fullest sense of the word, and may be sold, transferred, mortgaged, and inherited without infringing the title to the United States, and when a location is perfected it has the effect of a grant by the United States of the right of present and exclusive possession. (*Forbes* v. *Gracey,* 94 U. S. 762; *Belk* v. *Meagher,* 104 U. S. 279; *Gwillim* v. *Donnellan,* 115 U. S. 45; *Noyes* v. *Mantle,* 127 U. S. 348)." So it would seem that the location of a mining claim is without doubt a purchase of public lands within the spirit and purpose of the prohibition contained in section 452, as stated in the able opinion filed in this case by the trial judge. "When the object of the prohibition statute is plainly to prevent the doing of the prohibited thing, an act done in violation of it, according to the great weight of authorities, is an illegal act from the doing of which no legal right can be acquired. The statute may contain a prohibition alone, a prohibition and a penalty, or frequently, where there is a penalty and no prohibition, the prohibition from the imposition of the penalty. Where the statute contains both a positive prohibition and a penalty for its violation it is considered a very strong ground for holding that an act in contravention of it is illegal and a right asserted under such act void." (15 Am. & Eng. Ency. Law, 2d ed. 938, 939, 940, and cases in the reporter's notes.) As further stated in said opinion, "where a title is asserted by one who has acquired his alleged title by violation of the prohibition of section 452, it would seem that the plain language of the section, as well as its manifest object, would require the court to declare the asserted title to be void. To say that one, who for the public good is expressly prohibited from locating a mining

claim, can nevertheless locate such claim, hold and mine it and extract the valuable mineral until such time as he desires and be granted a patent from the government, would be to permit one who has violated the law to enjoy the fruits of his wrongdoing, and such a result should not follow a disobedience of the law."

By the Court, NORCROSS, J.:

This is an action brought by the plaintiffs in the court below to recover possession of certain mining ground known as the "Triangle," "Last Shange" and "Bellevue" mining claims, situate in the Ely Mining District, Lincoln County, Nevada, and damages for ore extracted therefrom by the defendants.

It is admitted by the defendants that the premises in controversy were on the 1st day of January, 1903, valid and subsisting mining claims, and the property of the plaintiffs and the defendant Lynch. It was admitted that plaintiffs failed to perform on the ground in controversy the annual labor required for the year 1903, and that on January 1, 1904, the defendant Cook, who was then what is commonly called a "deputy United States mineral surveyor," went upon the premises in controversy and located a claim 600 feet wide by 1,500 feet long, and called the same the "Yuba East," which embraced the whole of the said Triangle, Bellevue and Last Shange mining claims.

It was also conceded by the plaintiffs that in the making of the said location all acts were done and performed which were necessary under the law to effect a valid location of the ground in controversy, and that the said Yuba East claim was a valid location, and was the property of the defendant Cook, unless Cook was disqualified from making a valid location of the premises by virtue of the fact of his authority under the laws of the United States to survey mining claims, or unless he was disqualified from locating the premises by virtue of certain alleged contractual relations between him and the plaintiffs, growing out of a certain lease upon the premises, and certain alleged promises by the defendant Lloyd

(claimed to be a copartner with Cook) to perform the assessment work for the plaintiffs for the year 1903.

The questions as to the alleged disqualification of Cook to locate the ground by virtue of the lease, or by virtue of any contract by his alleged partner Lloyd to perform the assessment work for the plaintiffs, were decided by the trial court against the contention of the plaintiffs. All the issues of fact and of law were decided for the defendants, except that the trial court concluded, as matter of law, that the location of the premises by the appellant John R. Cook was void, for the reason that at the time of making the location he was a person who then held a license under the government of the United States to survey mining claims in the State of Nevada. The only question, therefore, presented upon the appeal is the right of a deputy United States mineral surveyor to locate a mining claim while holding a commission from the Surveyor-General of the United States to survey mining claims. It is contended, and has been so held by certain rulings of the General Land Office, that such deputy United States mineral surveyor falls within the prohibition contained in section 452 of the Revised Statutes of the United States. It is therefore further contended that such a surveyor is disqualified from locating a mining claim, and that any attempted location by him is void.

The section in question reads as follows: "Sec. 452. The officers, clerks, and employees in the General Land Office are prohibited from directly or indirectly purchasing or becoming interested in the purchase of any of the public land; and any person who violates this section shall forthwith be removed from his office."

It will be observed that the section in question imposes a penalty or forfeiture or both, and therefore under all the authorities must be strictly construed. The section quoted is one of the sixteen sections of the Revised Statutes of the United States, comprising chapter 3, "The General Land Office," and which, in turn, is a part of title 11, "The Department of the Interior." The first section of the chapter, relating to the "General Land Office" (Rev. Stats. U. S.,

446), provides that there shall be in the Department of the Interior a Commissioner of the General Land Office, who shall be appointed by the President, etc.

The next section (section 447) provides that there shall be an officer called the ".Recorder of the General Land Office," to be appointed by the President, etc.

The next section (section 448) provides that there shall be in the General Land Office a principal clerk of the public lands and a principal clerk on private land claims, to be appointed by the President, and that they shall perform such duties as may be assigned to them by the Commissioner of the General Land Office.

The next section (section 449) provides that there shall be a principal clerk of the surveys, who shall be appointed by the President. He shall direct and superintend the making of the surveys, etc.

The next section provides that the President shall appoint a secretary, whose duty it shall be to sign patents, etc.

The next section (section 451) authorizes appointment of an assistant secretary. The act specifies the salary of each of such officers.

Having provided for the appointment of the foregoing officers, the next section (the one upon which this case turns) prohibits the officers, clerks, and employees in the General Land Office from purchasing the public lands, under penalty of loss of employment.

Section 2207 of the Revised Statutes of the United States, under title 32, "The Public Lands," c. 1, provides for the appointment by the President of 'a surveyor-general for certain states and territories therein mentioned, of which Nevada is one.

Section 2319, Rev. Stats. U. S. (chapter 6 of same title), provides: "All valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States and those who have declared their intention to become such, under regulations prescribed by law, and according to the local customs

or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States."

Section 2334, Rev. Stats. U. S., contained in the last-mentioned chapter, provides: "The Surveyor-General of the United States may appoint in each land district containing mineral lands as many competent surveyors as shall apply for appointment to survey mining claims. The expenses of the survey of vein or lode claims, and the survey and subdivision of placer claims into smaller quantities than one hundred and sixty acres, together with the cost of publication of notices, shall be paid by the applicants, and they shall be at liberty to obtain the same at the most reasonable rates, and they shall also be at liberty to employ any United States deputy surveyor to make the survey. The Commissioner of the General Land Office shall also have power to establish the maximum charges for surveys and publication of notices under this chapter; and, in case of excessive charges for publication, he may designate any newspaper published in a land district where mines are situated for the publication of mining notices in such district, and fix the rates to be charged by such paper; and, to the end that the commissioner may be fully informed on the subject, each applicant shall file with the register a sworn statement of all charges and fees paid by such applicant for publication and surveys, together with all fees and money paid the register and the receiver of the land office, which statement shall be transmitted, with the other papers in the case, to the Commissioner of the General Land Office."

The foregoing, we think, include all such portions of the Revised Statutes of the United States to which reference need be made in order to reach a solution of the question here presented. If we understand the position of counsel for respondents, and that taken by the lower court, as well as by some of the decisions of the land office, section 452 of the Revised Statutes should be construed to mean substantially as follows: The officers, clerks, and employees of the General Land Office are disqualified from, directly or indirectly, purchasing, or becoming interested in the purchase of, any of

the public land, and any and all acts and things done in the way of an attempt to purchase or become interested in the public land are void. Any person who so attempts to purchase or become interested in the public land shall forthwith be removed from his office.

It is contended upon the part of the respondents that the foregoing not only embraces substantially the intention of Congress in enacting the section in question, but that a deputy United States mineral surveyor, appointed under the provisions of section 2334, *supra*, is an officer, clerk, or employee in the General Land Office.

The main positions taken by counsel for appellants upon the legal questions presented in this case, are as follows: "(1) The statute (section 452, Rev. Stats. U. S.) does not affect the validity of a purchase of public lands by the persons named by it, but the sole consequence of a purchase by them is a loss of employment. (2) If the validity of a purchase is affected, it is only affected in the same manner that a purchase by an agent from his principal at common law was affected, namely, it is merely voidable, and therefore not open to attack by plaintiffs, but only by the government of the United States. (3) Whatever may be the consequences to the 'officers, clerks, or employees in the General Land Office' purchasing the public lands, they have no application to a person licensed to survey mineral lands under section 2334, because such person is not an officer, clerk, or employee in the General Land Office or of the government, or even an employee of the applicant for patent."

Our attention has not been called to the decision of any court where the question here presented has been passed upon, excepting that of the Supreme Court of Utah in the case of *Lavagnino* v. *Uhlig*, 71 Pac. 1046, in which case the Utah court followed the decisions of the land department in *Floyd* v. *Montgomery*, 26 Land Dec. Dep. Int. 122, and *Frank A. Maxwell*, 29 Land Dec. Dep. Int. 76, holding that "a deputy mineral surveyor, while holding such office, is disqualified as a mineral entryman." The Utah case was appealed to the Supreme Court of the United States, but was there affirmed upon another point, the question here presented being dis-

posed of in the following manner: "We therefore come at once to a consideration of that question, and, of course, in doing so assume, for argument's sake, that the section of the Revised Statutes relied upon and the rules and regulations of the land department did not prohibit a deputy mineral surveyor from making a location of mineral land." (*Lavagnino v. Uhlig*, 198 U. S. 452, 25 Sup. Ct. 716, 49 L. Ed. 1119.)

While the decisions of the land department, on matters of law, are not binding upon the courts, they should not be overruled except when they are clearly erroneous. (*Hastings & Co. v. Whitney*, 132 U. S. 357, 366, 10 Sup. Ct. 112 33 L. Ed. 363.) In order to arrive at a correct solution of the questions, it will be advantageous to review the several decisions of the land department bearing directly upon the point in controversy; but, before doing so, it will be well to give a brief review of how the section in question came to be incorporated, in its present form, in the Revised Statutes.

The General Land Office was first established April 25, 1812, by act of Congress entitled: "An act for the establishment of a General Land Office in the Department of the Treasury." (2 Stat. 716.) Section 10 of this act provided as follows: "No person appointed to an office instituted by this act, or employed in any such office, shall directly or indirectly be concerned in the purchase of any right, title, or interest, in any public land, either in his own right, or in trust for any other person, or in the name or right of any other person in trust for himself, nor shall take or receive any fee or emolument for negotiating or transacting the business of the office. Any person offending in the premises against the prohibitions of this act shall forfeit and pay one hundred dollars; and upon conviction, shall be removed from office."

Congress on July 4, 1836, passed "An act to reorganize the General Land Office." (5 Stat. 107.) This act provided for quite a large number of officers, clerks, and employees, and fixed their salaries. Section 14 of this act provided that "all and every of the officers whose salaries are hereinbefore provided for, are hereby prohibited from directly or indirectly purchasing, or in any way becoming interested in the pur-

chase of any of the public land; and in case of a violation of this section by such officer, and on proof thereof being made to the President of the United States, such officer so offending shall be forthwith removed from office." We think it quite clear that both the act of April 25, 1812, and that of July 4, 1836, related solely to the General Land Office; *i. e.*, the governmental bureau in Washington charged with the administration of the public lands, and the officers and employees in that bureau. By the act of July 4, 1836, which remained in force until the adoption of the Revised Statutes, it is clear, we think, that the prohibitory provisions of section 14 did not apply to any persons other than the officers whose salaries were provided for in that act. Had the language of section 14 been incorporated into the Revised Statutes, without change of verbiage, it is difficult to conceive of its receiving the interpretation given by some of the land decisions to the provisions of section 452 of the Revised Statutes, no matter what that department may have thought of the wisdom of such construction.

The act of June 27, 1866, "An act to provide for the revision and consolidation of the statute laws of the United States" (14 Stat. 74), did not authorize the commission to change the manifest meaning of a statute. The statute provided that "the commission shall bring together all statutes and parts of statutes which, from similarity of subject, ought to be brought together, omitting redundant or obsolete enactments, and making such alterations as may be necessary to reconcile the contradictions, supply the omissions, and amend the imperfections of the original text."

In the case of *Logan* v. *United States*, 144 U. S. 302, 12 Sup. Ct. 617, 36 L. Ed. 429, it was held that it is not to be inferred that Congress, in revising the statutes, intended to change their effect, unless an intention to do so is clearly expressed. To the same effect, see the cases of *United States* v. *Ryder*, 110 U. S. 739, 4 Sup. Ct. 196, 28 L. Ed. 308; *McDonald* v. *Hovey*, 110 U. S. 629, 4 Sup. Ct. 142, 28 L. Ed. 239; *Stewart* v. *Kahn*, 11 Wall. (U. S.) 502, 20 L. Ed. 176; *Murdock* v. *City of Memphis*, 20 Wall. (U. S.) 617, 22 L. Ed. 429; *Smyth* v. *Fiske*, 23 Wall. (U. S.) 382, 23 L. Ed. 47.

It has also been held by the same court upon numerous occasions that in construing Revised Statutes, where a doubt arises, it is admissible to recur to its connection in the act of which it was originally a part. (*Doyle* v. *Wisconsin*, 94 U. S. 51, 24 L. Ed. 64; *United States* v. *Hirsch*, 100 U. S. 35, 25 L. Ed. 539; *United States* v. *Bowen*, 100 U. S. 513, 25 L. Ed. 631; *Meyer* v. *Car Co.*, 102 U. S. 11, 26 L. Ed. 59; *Bate Refrigerating Co.* y. *Sulzberger*, 157 U. S. 39, 15 Sup.'Ct. 508, 39 L. Ed. 601.)

The same court has also held that reference to the original statutes cannot be had to control Revised Statutes when the meaning thereof is plain. (*United States* v. *Bowen, supra; Arthur* v. *Dodge*, 101 U. S. 36, 25 L. Ed. 948; *Vietor* v. *Arthur*, 104 U. S. 499, 26 L. Ed. 633; *Deffeback* v. *Hawke*, 115 U. S. 402, 6 Sup. Ct. 95, 29 L. Ed. 423.)

Can it be said that it is plain from the provisions of section 452 of the Revised Statutes that the provisions thereof were intended to apply not only to the officers, clerks, and employees in the General Land Office at Washington, but also to apply to the officers, clerks, and employees of the offices of the various United States surveyors-general in the various states and territories? And, if it cannot be so said, will such a construction be aided by a reference to section 14 of the act of 1836, *supra?* We think it quite-clear that, if it is a proper case for recurrence to the latter act to construe the section in question, so broad an interpretation cannot be made.

The land office has rendered a number of decisions construing the provisions of section 452, *supra*, some of which have direct reference to its application to deputy mineral surveyors appointed under the provisions of Rev. Stats., 2334, *supra*.

In the case of *Grandy* v. *Bedell*, 2 Land Dec. Dep: Int. 314 (1883), Mr. Secretary Teller, quoting section 452, Rev. Stats., says (page 315): "It will be observed that the section quoted, and this is the only statutory provision bearing on the subject, does not extend to clerks in the district offices, but by its terms is confined to those employed in the General Land Office. Your office has, however, by rule, extended

the operation of this statute so as to include clerks in the local offices; and this department held in the case of *State of Nebraska* v. *Dorrington*, 2 Copp, Land Laws, 1882, p. 647, the defendant being at the time of making his timber culture entry a clerk in a local land office, that such fact was sufficient ground for the cancelation of the entry." The claimant, Bedell, was a receiver's clerk in the local land office at date of making the timber culture entry .in contest, but at date of initiation of contest by Grandy he had resigned his position. The secretary therefore held: "Taking these facts into consideration, and the further one that he was not by express provision of law incompetent to make .the entry, I am of the opinion that it should be permitted to stand." The instructions issued by Commissioner McFarland on August 28, 1883, and reported in 2 Land Dec. Dep. Int. 313, indicate that in the opinion of the land department there was no statutory inhibition against entries of public land by land department employees outside of those in the General Land Office. The instructions referred to are as follows: "Gentlemen, I am in receipt of the receiver's letter of July 7, 1883, in which the following question is submitted to this office: Is it admissible for a register or receiver or special agent or clerk to make a timber culture entry in a district other than the one in which he is located? I reply that I think such entry, excepting as to special agents, is admissible. The officer or clerk making such entry should state in his affidavit the particular position he holds, that the entry may be intelligently dealt with."

Subsequently, in 1890, the land department appears to have modified views above expressed, holding in the case of *Herbert McMicken*, 10 Land Dec. Dep. Int. 97, and 11 Land Dec. Dep. Int. 96, that a clerk or employee in the office of a United States surveyor-general was clerk or employee in the General Land Office, and hence fell within the inhibition of section 452, Rev. Stats.

Under the decision in McMicken's case, *supra*, a general circular was issued by the land department, dated September 15, 1890, and reported in 11 Land Dec. Dep. Int. 348, stating that: "In accordance with said decision, all officers,

clerks, and employees in the offices of the surveyors-general, the local land offices, and the General Land Offices, or any persons, wherever located employed under the supervision of the Commissioner of the General Land Office, are, during such employment, prohibited from entering, or becoming interested, directly or indirectly, in any of the public lands of the United States."

The above rule has since been generally adhered to by the department, although in the case of *Winans* v. *Beidler*, 15 Land Dec. Dep. Int. 266, decided in 1892, the land department appears to have again modified its views as to the construction of section 452, Rev. Stats., holding that Winans, who was employed as a copyist in the General Land Office at Washington, could perfect a homestead entry made shortly before his appointment to such position.

The first reported case in which the land department passed upon the right of a deputy mineral surveyor to make entry of lands is *Denison* v. *Willits*, 11 Copp, Land Owner, 261 (1884), in which Commissioner McFarland said: "There seems to be no valid objection as to the right of a deputy surveyor to make a mineral entry, in which case he cannot act in any other capacity than that of claimant."

The next case in which the question arose was that of *Lock Lode*, 6 Land Dec. Dep. Int. 105, wherein the secretary said: "But one question is in this case, viz., the right of a deputy mineral surveyor to make a mineral entry in the district for which he is appointed." He then quotes section 2319, Rev. Stats., declaring all mineral deposits on public lands to be open to exploration and purchase, and adds: "Section 2325 of the United States Revised Statutes provides that any one authorized to locate a mineral claim may procure a patent for the same upon compliance with certain requirements and conditions therein specified. Deputy surveyors are appointed by the surveyor-general of each surveying district, under and by virtue of the authority conferred in section 2334 of United States Revised Statutes. Under this section, the surveyors-general of the several districts appoint as many competent deputy surveyors for mining claims as may apply to them for such appointment, and give bond in the sum of $10,000

for the faithful performance of their duties. A mineral claimant then has the option of employing any one of said deputies to do his surveying with whom he can make a suitable contract; it being always understood that the claimant is to bear all the expenses of notices, surveys, etc. It was ruled by your office, February 6, 1884, in the case of *Denison* v. *Willits*, 11 Copp, Land Owner, 261, the only time the question has ever been raised, so far as can be ascertained, that a deputy mineral surveyor may make mineral land entries in his own district, but in that event he cannot act in any other capacity than that of claimant. It would seem that there can be no valid objection to this entry as a matter of public policy, unless it be said that claimant's position as a deputy surveyor gives him an advantage over the rest of the community in locating claims; in other words, his position gives him special information as regards the places where valuable minerals are to be found. I am not of opinion, however, that this objection should be sufficient to work a forfeiture of an entry already made, or to prevent the making of one."

This ruling of the land department remained in full force without any modification until the decision in *Floyd* v. *Montgomery*, *supra*. In that case a deputy mineral surveyor was one of seven applicants for patents on. a mining claim. His interest in the claim was acquired after location and immediately prior to application for patent. He made the survey, and prepared and filed preliminary report and field notes with report on improvements. It being urged that he was disqualified by section 452, Rev. Stats., from obtaining patent, the secretary directed that the deputy mineral surveyor's name be stricken from the final certificate, and the entry passed to patent in the name of the remaining applicants, saying (page 136): "In *Herbert McMicken, et al.*, 10 Land Dec. Dep. Int. 97, on review 11 Land Dec. Dep. Int. 96, Secretary Noble held that an officer, clerk, or employee in the office of a United States surveyor-general is an officer, clerk, or employee in the General Land Office within the meaning of this section. In *Muller* v. *Coleman*, 18 Land Dec. Dep. Int. 394, Secretary Smith held that a deputy surveyor

is such employee, and in the Neill case; 24 Land Dec. Dep.
Int. 393, the present secretary held that a surveyor-general
is within the inhibition so declared. A circular of similar
import was issued September 15, 1890 (11 Land Dec. Dep.
Int. 348). From an examination of these authorities and a
consideration of the language and manifest purpose of the
section, it seems clear that its prohibitive provisions embrace
a deputy mineral surveyor. In so far as the cases of *State
of Nebraska* v. *Dorrington*, 2 Copp, Land Laws, 647, *Denison*
v. *Willits*, 11 Copp, Land Owner, 261, and *Lock Lode*, 6
Land Dec. Dep. Int. 105, are in conflict with the views
expressed in these later cases, they are overruled."

In *Frank A. Maxwell*, 29 Land Dec. Dep. Int. 76, and
*Alfred Baltzell*, Id. 333, the department again ruled that a
deputy mineral surveyor was disqualified by the statute from
making entry, basing said decision solely on *Floyd* v. *Mont-
gomery*, *supra*.

The next and last ruling of the department on this ques-
tion was in the case of *W. H. Leffingwell*, 30 Land Dec. Dep.
Int. 139 (1900), holding that a deputy mineral surveyor who
has no interest, real or contingent, in a mining claim at the
date of the survey thereof by him, nor at the date of the
application for patent thereto, but who subsequently makes
entry thereof, does not come within the spirit of section 452
of the Revised Statutes, prohibiting employees of the Gen-
eral Land Office from "purchasing or becoming interested in
the purchase of the public lands"; the secretary saying:
"Without at the present time considering the correctness
of the conclusions arrived at in the case of *Floyd*, *et al.*, v.
*Montgomery*, *et al.*, 26 Land Dec. Dep. Int. 122, 136, and sim-
ilar cases in so far as it was therein held that the prohibitive
provisions of said section embrace a deputy mineral surveyor,
it is sufficient to say that the facts in this case, as disclosed
by the record, are materially different from those stated in
the cases referred to. Independently of the statute, it would
be within the power of the land department in making regu-
lations for the survey of mining claims to provide against
the survey thereof by one interested in the claim; the reason
therefor being manifest. In the case under consideration,

Leffingwell had no interest, real or contingent, in the claim involved at the date of the survey thereof by him, or at the date of the application for patent thereto, and, under these circumstances, it is not believed that he is within the spirit of the statute or circular above quoted."

It thus appears that until 1898 no doubt was expressed by the land department as to the right of a deputy mineral surveyor to make a mineral entry; the department in two decisions expressly ruling that he had such right. In *Floyd v. Montgomery, supra*, the department reversed its previous decisions, and held that a mineral surveyor was prohibited by the statute from making entry. While in the Leffingwell case, *supra*, the secretary did not express an opinion as to the correctness of the rulings of the department in the case of *Floyd* v. *Montgomery*, and other similar cases, there is a strong inference, at least, that the rulings in those cases are not so clearly correct that the question they determine may not be the subject of further consideration by the department.

Commenting upon these various decisions of the land department, Lindley, in his work on Mines, says: "The land department at one time held that they (deputy mineral surveyors) were not prohibited from making mineral entries within the district for which they are appointed. By subsequent rulings it was determined that they came within the inhibition of section 452 of the Revised Statutes, and were prohibited from entering or becoming interested in any of the public lands of the United States. The latest expression by the department on the subject has a tendency to suggest the incorrectness of these later rulings. The existing land department regulations seem to limit the disqualification of the deputy surveyor to the making of surveys of mineral claims in which he holds an interest, thus intimating that he may lawfully locate and hold a claim, but could not survey it for a patent." (Lindley on Mines, 2d ed. 661.)

A careful examination of the points presented in this case convinces us that the rulings of the land department, in so far as they hold or infer that a deputy mineral surveyor is disqualified to locate a mining claim because of the provisions of Revised Statutes, sec. 452, are erroneous. In the

view we take of this case, it is not necessary to pass upon all the legal questions presented in the able argument of counsel, for the position, we think, is well taken that a deputy mineral surveyor is not an officer, clerk, or employee in the General Land Office, even if we should consider that the office of United States surveyor-general is a part of the General Land Office and subject to the inhibition of section 452, Rev. Stats., *supra*, a question we do not pass upon. .

Deputy mineral surveyors are appointed without limit, and for no particular time, by the Surveyor-General of the United States, under the provisions of section 2324, Rev. Stats., *supra*. They are not required to keep an office at any particular place, or at all. They do not remain under the direction or supervision of the surveyor-general. They are not obliged to perform any service, either for the government or any individual. They are simply persons who have been designated as having the requisite qualifications to make a proper survey of mining claims. If they perform any services at all, it must be as a matter of private contract between themselves and the mining claimant. They receive no salary or compensation whatever from the government; nor does the government supply them with instruments or assistants while engaged in making a mineral survey. They have no access to the official records of the surveyor-general's office, other than that afforded any private citizen. A deputy mineral surveyor may never make a survey after his appointment, or he may make fifty or more in a year. The duties of a mineral surveyor are exclusively professional, and in no sense those of a clerk. He keeps no records or accounts, he registers no act of any superior. He has no custody of public property or papers. His duties consist, when employed by the owner of a mining claim, in making for such owner a survey thereof, showing improvements thereon, with preliminary plat and field notes of survey. When the field notes and preliminary plat of survey have been filed with the surveyor-general, his duty in the premises is ended, except it be to correct an error made by him.

In the leading case of *United States* v. *Germaine*, 99 U. S. 508, 25 L. Ed. 482, the court, by Mr. Justice Miller, laid down

the definition of a federal officer, saying (page 509 of 99 U. S.): "The constitution for purposes of appointment very clearly divides all its officers into two classes. The primary class requires a nomination by the President and confirmation by the senate. But foreseeing that when offices become numerous, and sudden removals necessary, this mode might be inconvenient, it was provided that in regard to officers inferior to those specially mentioned Congress might by law vest their appointment in the President alone, in the courts of law, or in the heads of departments. That all persons who can be said to hold an office under the government about to be established under the constitution were intended to be included within one or the other of these modes of appointment there can be but little doubt."

In that case the defendant, Germaine, who was a civil surgeon appointed by the commissioner of pensions, under section 4777, Rev. Stats., was indicted for extortion as an officer of the United States, but the court held that he was not such officer, saying further (page 511): "If we look to the nature of defendant's employment, we think it equally clear that he is not an officer. In that case (*United States* v. *Hartwell*, 6 Wall. 385, 18 L. Ed. 830), the court said the term embraces the ideas of tenure, duration, emolument, and duties, and that the latter were continuing and permanent, not occasional or temporary. In the case before us, the duties are not continuing and permanent, and they are occasional and intermittent. The surgeon is only to act when called on by the commissioner of pensions in some special case, as when some pensioner or claimant of a pension presents himself for examination. He may make fifty of these examinations in a year, or none. He is required to keep no place of business for the public use. He gives no bond, and takes no oath, unless by some order of the commissioner of pensions of which we are not advised. No regular appropriation is made to pay his compensation, which is two dollars for every certificate of examination, but it is paid out of money appropriated for paying pensions in his district, under regulations to be prescribed by the commissioner. He is but an agent of the commissioner, appointed by him, and removable by him at his

pleasure, to procure information needed to aid in the per-
formance of his own official duties. He may appoint one or
a dozen persons to do the same thing. The compensation
may amount to five dollars or five hundred dollars per annum.
There is no penalty for his absence from duty or refusal to
perform, except his loss of the fee in the given case. If Con-
gress had passed a law requiring the commissioner to appoint
a man to furnish each agency with fuel at a price per ton
fixed by law high enough to secure the delivery of the coal,
he would have as much claim to be an officer of the United
States as the surgeons appointed under this statute."

Again, in *United States* v. *Smith*, 124 U. S. 525, 532, 8
Sup. Ct. 595, 31 L. Ed. 534, the court said: "An officer of
the United States can only be appointed by the President,
by and with the advice and consent of the senate, or by a
court of law or the head of a department. A person in the
service of the government who does not derive his position
from one of these sources is not an officer of the United
States in the sense of the constitution. This subject was
considered and determined in *United States* v. *Germaine*, 99
U. S. 508, 25 L. Ed. 482, and in the recent case of *United
States* v. *Mouat*, 124 U. S. 303, 8 Sup. Ct. 505, 31 L. Ed. 463.
What we have here said is but a repetition of what was
there authoritatively declared."

In the case of *Louisville R. R. Co.* v. *Wilson*, 138 U. S. 501,
505, 11 Sup. Ct. 405, 34 L. Ed. 1023, the court, by Mr. Jus-
tice Brewer, said: "The terms 'officers' and 'employees' both
alike refer to those in regular and continual service. Within
the ordinary acceptation of the terms, one who is engaged
to render services in a particular transaction is neither an
officer nor an employee. They imply continuity of service,
and exclude those employed for a special and single trans-
action. An attorney of an individual retained for a single
suit, is not his employee. It is true he has engaged to render
services; but his engagement is rather that of a contractor
than of an employee."

The same rule was laid down by the court in *Auffmordt* v.
*Hedden*, 137 U. S. 310, 11 Sup. Ct. 103, 34 L. Ed. 674, in which
the court, passing upon the status of a "merchant appraiser"

appointed or selected by the collector of customs under authority of section 2930, Rev. Stats., and whose compensation was payable by the importer, said (page 326 of 137 U. S., and page 107 of 11 Sup. Ct. [34 L. Ed. 674]): "The merchant appraiser is an expert, selected as an emergency arises, upon the request of the importer for a reappraisal. His appointment is not one to be classified under the civil service law. He is not to be appointed on a competitive examination, nor does he fall within the provisions of the civil service law. He is not a 'clerk' nor an 'agent' nor a 'person employed,' in the customs department, within the meaning of section 6 of the civil service act; nor is he an officer of the United States, required to be appointed by the President, or a court of law, or the head of a department. He is an expert selected as such. Section 2930 requires that he shall be a 'discreet and experienced merchant, familiar with the character and value of the goods in question.' He is selected for the special case. He has no general functions, nor any employment which has any duration as to time, or which extends over any case further than as he is selected to act in that particular case. He is executive agent, as an expert assistant to aid in ascertaining the value of the goods, selected for the particular case on the request of the importer, and selected for his special knowledge in regard to the character and value of the particular goods in question. He has no claim or right to be designated, or to act except as he may be designated."

See, also, the following authorities: *People ex rel. Sims* v. *Fire Commissioners,* 73 N. Y. 437; *People* v. *Board of Police,* 75 N. Y. 38; *Commonwealth* v. *Fitler,* 147 Pa. 288, 23 Atl. 568, 15 L. R. A. 205; *Mulholland* v. *Wood,* 166 Pa. 486; 31 Atl. 248; *State* v. *Mason,* 61 Ohio St. 62, 55 N. E. 167; *Attorney - General* v. *McCaughey,* 21 R. I. 341, 43 Atl. 646; *State* v. *Emerson,* 72 Me. 455; *Campfield* v. *Lang,* 25 Fed. 128; *Frick Co.* v. *Norfolk Co.,* 86 Fed. 738, 32 C. C. A. 31; *United States* v. *McCrory,* 91 Fed. 295, 93 C. C. A. 515; *In re Grunwold,* 99 Fed. 705; *United States* v. *Smith,* 124 U. S. 525, 8 Sup. Ct. 595, 31 L. Ed. 534; *Vane* v. *Newcombe,* 132 U. S. 233, 10 Sup. Ct. 60, 33 L. Ed. 310.

The defendant, John R. Cook, for the reasons given, was not disqualified from locating the "Yuba East Lode" mining claim, described in the complaint, on the 1st day of January, 1904, because of the provisions of section 452, Rev. Stats. U. S.

The judgment and order of the trial court are reversed, and a new trial granted.

SWEENEY, J.: I concur.

TALBOT, C. J., dissenting:

It is alleged in the complaint, and admitted in the answer, that the defendants Cook and Lloyd were the grantors to the plaintiffs, excepting Louisa Frank, of a part of the ground in dispute. The district court found from the evidence and admissions made on the trial that on the 31st day of December, 1903, and for several years prior thereto, the plaintiffs and defendant Lynch were the owners of the Last Shange, the Triangle, and the Bellevue mining claims in contest; that in June, 1902, there was executed to defendant Lloyd a written lease on the property for one year, to June 17, 1903; that the defendant Cook was at all times during the term of the lease jointly interested with defendant Lloyd; that between the 17th day of June, 1902, and some time in October of that year, both the defendants Cook and Lloyd mined the premises described in the lease as partners thereunder; that in the month of October or November, 1902, when the lease still had more than one-half of its term of one year to run, they quit the premises and removed their tools, and that neither of them entered thereon again until the latter part of December, 1903.

During the year 1902, and after the 17th day of June of that year, Cook and Lloyd did about five hundred dollars worth of work on the premises covered by the lease, and more than sufficient to cover the assessment work for that year. The principal plaintiffs in interest lived out of the state, and the defendants resided adjacent to the claims. Possession was not surrendered to plaintiffs at the end of the time specified in the lease, nor were they notified by the defendants that the latter had quit possession or were ready to surrender the premises. The plaintiffs did not have any

labor performed on the claims during the year 1903. In December, 1903, the defendants Cook and Lloyd, still without having surrendered possession to the plaintiffs or having notified the plaintiffs that they had quit the premises, did some work on the claims, giving the appearance that the required assessment was being performed. On the 1st day of January, 1904, the defendant Cook, while he was a United States deputy mineral surveyor, made a relocation under which the ground is now claimed.

On the theory that it makes no difference in whose name a lease or property belonging to a partnership stands, it is urged in the respondent's brief that Cook and Lloyd were equally bound and responsible as partners under the lease, and, in addition to the assertion that Cook is disqualified to make the location, it is claimed "that the district court erred in not holding that there was a relationship of trust and confidence existing between the defendants and plaintiffs which precluded them from initiating any rights to the property adverse to the plaintiffs for the reasons, first, that they admit that they are the grantors of the plaintiffs; second, they admit that they performed the assessment work for several years for the plaintiffs; third, that they entered into the possession of the ground jointly under a lease made by the plaintiffs on the 17th day of June, 1902, and never at any time notified the plaintiffs that they had abandoned the lease or offered to redeliver possession of the same; fourth, that by their conduct and statements they misled the plaintiffs and respondents by the fact of their coming on the ground at different times during the latter part of the year 1903 and working thereon, and their representations that they were doing the work as assessment work for the plaintiffs." Of the two points relied upon by plaintiffs on the trial, the district court found against them on the contention that Cook was disqualified from relocating the ground which with Lloyd he held under a lease from the plaintiffs without surrendering possession to them, and based the judgment in favor of the plaintiffs on the other ground that Cook was disqualified from locating claims because he was a United States deputy mineral surveyor.

The plaintiffs and respondents are still claiming here that Cook was disqualified by reason of his being such surveyor, but that, if this court holds that he was not, the judgment should be sustained on the ground that he could not make the location against his lessors when he had not surrendered possession to them. Against this contention it is said that respondents are not appealing, and they have not assigned any error against the conclusion of the district judge that Cook was not disqualified as a lessee. Whether, under these circumstances, the facts as found by the trial court may be considered conclusive unless the defendant expresses dissatisfaction with them, and requests a new trial for the purpose of introducing further evidence, and whether this court could sustain the judgment if it believed the conclusion of law made by the district court that Cook was not disqualified as a lessee was wrong, and on that ground, is not determined, and, as this question is not discussed in the decision, I express no opinion as to whether the judgment ought to be sustained on the ground that the lease was renewed and continued by the failure of Cook and Lloyd to surrender possession and by their working on the ground in December, 1903, six months after the time specified for its termination and for the redelivery of the claims. (*Fitton* v. *Hamilton*, 6 Nev. 196.)

Whether Cook and Lloyd, living adjacent to the mine and in possession under the lease from the principal plaintiffs, who were absent from the state, could, without surrendering or attempting to surrender possession, or notifying the plaintiffs that they wanted to surrender possession, and after working on the claims six months after the life of the lease, make a location a few days later, if Cook had not been a deputy mineral surveyor, which would not inure to the benefit of the plaintiffs, and whether the district court should not have found as a conclusion of law that Cook could not acquire rights in the premises against his lessors, and whether the judgment ought not to be affirmed on these grounds on the theory that the findings have correctly and satisfactorily to all parties settled the facts, and that the conclusions of law thereon may be reviewed in this court, without putting the

parties to the trouble and expense of another trial, unless there is dissatisfaction with the findings of the district court, and appellants ask for the remanding of the case to enable them to introduce evidence which might establish different facts more favorable to them, are questions which remain undecided here and may necessitate another appeal.

Whether the principle announced by this court that a wrong reason assigned for certain rulings by the trial judge will not reverse a correct result applies if the judgment is correct, but has been rendered on an incorrect conclusion of law when the findings of fact, standing unattacked, warrant a conclusion of law which would support the judgment, is not determined. Under such conditions, and where there is no appeal or specification of error by the respondent, should the judgment be sustained or should the case be remanded for a new trial? So much by way of showing that these propositions may be involved, but as they are not considered in the decision I express no opinion in regard to them.

In the conclusion reached by my associates that Cook was not disqualified as a United States deputy mineral surveyor for making locations I am unable to agree. The language in section 452, that "the officers, clerks, and employees in the General Land Office are prohibited from directly or indirectly purchasing or becoming interested in the purchase of any of the public land," plainly contains a prohibition against officers, clerks, or employees in the land office purchasing or becoming interested, directly or indirectly, in the purchase of the public lands, and, in addition, a penalty by removal from office is added. The argument in the spacious brief of more than one hundred printed pages, that the citizens, and not the government, own the land, and that Congress cannot deprive the citizen of his rights, is more sentimental than of legal force. Although our laws are most liberal in this regard, allowing citizens rights reserved in the crown in other countries, that the agricultural, timber, grazing, swamp, and mineral lands on the public domain belong to the government as against any citizen, and are subject to the laws of Congress, is an elementary proposition too clear for dispute. The language of the act being plain, it ought not to be varied

by reference to any former acts which it supersedes and repeals. As the location of mining claims is the first step toward the acquiring and purchasing of them from the government, and the officers, clerks, and employees in the land office are prohibited from purchasing or becoming interested in the purchase of the public lands, it follows that they ought to be considered as prohibited from making locations. Full force and fair interpretation should be given to the words used. The holding of the majority of the court that the penalty clause of the statute only is effective, and that the word "prohibit" which it contains does not prohibit, is equivalent to the elimination and judicial repeal of the prohibition enacted by Congress. No penalty or forfeiture is to be implied which is not clearly expressed, but the court has no more right to eliminate penalties or prohibitions which are plainly provided in an act of Congress than it has to impose others which are not expressed. The intention or purpose of the act should not be construed away by technicalities or fine distinctions. I hold to the broader construction that clerks, officers, and employees in the General Land Office include officers, clerks, and employees in the offices of the surveyors-general and the local land offices, which are merely arms or branches of the General Land Office. Within the letter of the act, a United States deputy mineral surveyor is a deputy because so specified and is generally so called, and, as far as I am aware, is without other designation. He is commissioned and required to give bond and qualify. His duties are regulated by the acts of Congress, and the rules of the land office, and are performed under its supervision for the aid of the government in disposing of the mineral lands. Although paid by the claimant, he acts for the government as much, if not more, in the proceedings to obtain patent for mines than for the claimant, and as much as other officers who are paid a fee by the claimant. His work is directed, supervised, and may be rejected by the Surveyor-General, the Commissioner of the General Land Office, and the Secretary of the Interior. He must be appointed and qualified under the statute and government regulations, possibly more fully than clerks and

employees of the land office generally, before he can act, and, in one sense, he is selected, employed by, and works for the United States. If there be any doubt as to whether his designation in the statute as a deputy and the other provisions do not bring him within the letter of the law, he comes within its spirit, and, if the letter kills, the spirit ought to control and give life to the statute. When we look to the object and purpose of the restriction by Congress against the acquiring of the public land by the officers, clerks, and employees in the land office, stronger reasons are apparent for prohibiting the deputy surveyors from locating mining claims than for placing such restraint upon other officers. His professional training and work on the ground in surveying for patent and which he could not be selected to do until he has first been appointed deputy by the surveyor-general gives him opportunities which no other officer has, and might enable him to discover that the apex of the most valuable ledge was outside of the claim, and thereby enable him to locate and hold it against the claimant by whom he had been employed, and whose confidence he ought to respect and whose interests he ought to protect. He would also by reason of his employment be able first to know whether claims exceeded the maximum length allowed by the statute and to locate the surplus or fractional ground himself before notifying and giving an opportunity to his employer to locate it. Restrictions which apply to the principal should apply to the deputy, who has equal or greater opportunities to take advantage of his employment, to the detriment of persons whose rights he ought to conserve and who pay for the services he renders in aiding the land office in the proceedings for patent. The deputy being plainly within the spirit of the act, if not also within the letter, and having greater opportunities to use to his own advantage the position he holds under the statute than the persons who are clearly prohibited from making locations, if by judicial construction he is not disqualified from making them, Congress ought to amend the law either by repealing the prohibition as to the others, or by making it apply to deputy mineral surveyors in terms too plain for dispute so it will operate fairly upon all.

In *Lavagnino* v. *Uhlig, supra,* the Supreme Court of the United States were careful to express no opinion regarding the right of a deputy mineral surveyor to make locations, and stated that, under the circumstances existing in that case, a consideration of the question was unnecessary. The decisions relied upon giving construction as to who are and who are not officers of the United States under other statutes may not be applicable because section 452 does not attempt to prohibit officers of the United States generally but only those in the land office, regarding whom no controversy was raised in those cases, and neither the language nor the spirit of that section was in any way considered.

In my opinion the past rulings and present practice as made by the Secretary of the Interior and the Commissioner of the General Land Office and the opinion of the Supreme Court of Utah in the Uhlig case, and the decision of the district court, that deputy mineral surveyors are barred by the act of Congress from making mining locations, ought to be approved and followed, and the judgment from which the appeal is taken ought to be affirmed.