[No. 1858]

ANGUS R. GIBSON AND W. C. STEWART, PLAINTIFFS, v. P. H. HJUL, ADMINISTRATOR OF THE ESTATE OF JOHN PARDY, DECEASED, AND J. H. BYERLY, RESPONDENTS. (HENRY K. MITCHELL, INTERVENER AND APPELLANT.)

1. PARTIES—IMPROPER INTERVENTION—OBJECTIONS.
    Even though intervener did not have such an interest in the result of the suit between plaintiffs and defendants as would entitle him to intervene, yet he having been permitted to do so, and, after plaintiffs dismissed their complaint, the case having gone to trial between intervener and defendants on the issues raised by their pleadings, intervener having thus virtually become the plaintiff, and defendants at the time plaintiffs dismissed their complaint, not having asked to have the entire proceedings dismissed, but, without further objection, proceeded to trial on the issues raised by their answer to intervener's complaint, the court had jurisdiction of the parties as well as of the subject-matter.

2. APPEAL AND ERROR—HARMLESS ERROR.
    Rejection of evidence to show acts of ownership by intervener's grantor was harmless; defendants not questioning the ownership of such grantor to a time six years after such acts.

3. TRIAL—ADMISSION OF EVIDENCE—ORDER OF ADMISSION—DISCRETION.
    The court has discretion to admit the evidence out of the regular order subject to the later supplying of other evidence which will establish its relevancy or materiality.

4. APPEAL AND ERROR—HARMLESS ERROR—EXCLUSION OF EVIDENCE.
    Even if it was permissible, on cross-examination of one who had testified that he and his partner had given up their case, to ask him how or why they had given it up, exclusion of the testimony, immaterial on any issue, was harmless.

5. MINES AND MINERALS—LOCATION—NOTICE—RECORDING.
    A notice of location of a mining claim is not required by Comp. Laws, 208, *et seq.*, to be recorded.

6. MINES AND MINERALS—NOTICE OF LOCATION—ADMISSION IN EVIDENCE.
    A notice of location of a mining claim, while not answering the requirements of Comp. Laws, 210, for a certificate of location, and so not evidence of an act of location, is admissible in support of a claim of adverse possession, and to explain testimony.

7. MINES AND MINERALS—CERTIFICATE OF LOCATION—RECORD.
    Filing of a defective certificate of a location of a mining claim, or failure to file any certificate, does not invalidate the claim.

8. MINES AND MINERALS—NOTICE OF LOCATION.

   Notice of location of a mining claim is not required to be strictly exact, and is not controlling; courses and distances given therein yielding to monuments erected on the ground.

9. MINES AND MINERALS—DISCOVERY SHAFT.

   Though ore was not discovered in a so-called "discovery shaft" on a mining claim, it is enough that the locator subsequently found valuable ore in other workings on the claim, and where ore was unquestionably discovered did work more than the equivalent of that required for a discovery shaft.

10. MINES AND MINERALS—RIGHTS AS BETWEEN DIFFERENT LOCATORS—EVIDENCE.

    Evidence, in a suit for mining lands, the parties claiming under locations, and defendants also claiming under adverse possession, *held* sufficient to sustain a judgment for defendants.

11. MINES AND MINERALS—LOCATION OF CLAIM—END LINES.

    That the end lines of a mining claim are not parallel does not invalidate the location, but only affects extralateral rights.

APPEAL from the District Court of the Third Judicial District, of the State of Nevada, Eureka County; *Peter Breen,* Judge.

Action by Angus R. Gibson and another against P. H. Hjul, administrator of John Pardy, deceased, and another. Henry K. Mitchell intervened, and, from a judgment for defendant Pardy, appeals. **Affirmed.**

The facts sufficiently appear in the opinion.

*Henry K. Mitchell, in pro. per.,* for Appellant:

I. The court erred in admitting as evidence defendant's notice of location. Said notices are void, because each notice omits the fourth and fifth subdivisions of section 210 of the Compiled Laws. Section 210 was in full force and effect at the time of the alleged location by defendant Pardy. The subdivisions required by the said statute and omitted in the notices are as follows: "Fourth—The number of linear feet claimed in length along the course of the vein, each way from the point of discovery, with a width on each side of the center of the vein, and the general course of the lode or vein as near as may be. Fifth—The dimensions and location of the discovery shaft or the equivalent sunk upon the claim." Said section 210 further provides: "Any record of the location of a lode mining claim which shall not contain all the require-

ments named in the section shall be void." The notices are absolutely dumb as to each of the above requirements. In such case the legislature said the location shall be void, and if void the court below erred in their admission as evidence. (Am. & Eng. Ency. Law, vol. 20, p. 720, and note 5.)

II.   There was no ore discovered by the defendant in his alleged discovery shaft at the time of, or prior or subsequent to, the pretended location. "Discovery is the first step in the location of the claim, or, more exactly, it is the precedent requisite to the location." "Discovery and appropriation are the sources of title to mining claims, and development by working is the condition of their continued possession." The provision of the Revised Statutes, 2320, is "No location of a mining claim shall be made until the discovery of the vein or lode within the claim." "No right can be acquired by location before discovery." (Bar. & Adams, p. 14; *Overman S. M. Co.* v. *Corcoran*, 15 Nev. 147.) The act of Congress will permit a discovery at any place within the limits of the claim, but the laws of the states and territories may require something else to perfect a discovery. In many states, accordingly, the discoverer of ore to locate his claim must sink a discovery shaft of a certain depth, or such tunnel, adit or open cut as is defined to be the equivalent of such shaft. (Bar. & Adams, p. 216.) Section 209 of the Compiled Laws requires that "the locator shall sink a discovery shaft upon the claim to the depth of at least ten feet from the lowest part of the rim of such shaft at the surface, or deeper if necessary, to show by such work a lode or deposit of mineral in place." (*Cheerman* v. *Shreve*, 40 Fed. 787; *McLaughlin* v. *Thompson*, 29 Pac. 816; *Burke* v. *McDonald*, 33 Pac. 49; *Foote* v. *Nat. M. Co.*, 2 Mont. 402; Wade Am. M. Laws, p. 44.) Discovery being the first prerequisite to a valid location, it is expedient to refer to all the testimony of the several witnesses for defendant and intervener to show that no discovery was made—that no vein or lode or rock in place carrying mineral of any value was developed in the discovery shaft.

III. . The end lines of defendant's location are not parallel and cannot be made parallel. Section 2320 of the Revised Statutes requires that the end lines shall be parallel; this is

mandatory. The requirement relates to the original location. Any person locating must have parallel end lines, whether his location conflicts with other claims or not. In a legal controversy the court may give him an angular piece of ground, provided the same is, within his original location, a parallelogram, but he cannot locate originally a triangular piece of ground as such. (Bar. & Adams, p. 441; *Eureka Con.* v. *Richmond*, 4 Sawy. 302; *Iron S. M. Co.* v. *Elgin Co.*, given in Bar. & Adams, p. 453.)

*Cheney, Massey & Price*, and *C. L. Harwood*, for Respondent:

I. The court below was without jurisdiction to grant the petition and permit the intervention. The appellant has no standing in this court. Henry K. Mitchell, as attorney for the plaintiffs, began this suit in 1906. February 4, 1908, he filed a so-called petition of intervention, alleging himself to be the owner of the Sam Tilden mine, and that the defendants and the plaintiffs (Mitchell's clients) claimed some portion of said Sam Tilden. He was permitted to intervene by an *ex parte* order made the same day; his bill of intervention was also filed the same day, and Mr. Mitchell admitted service upon himself, as attorney for the plaintiffs, of his bill of intervention. This pleading is in substance a complaint in ejectment and alleges title and right of possession in himself. The action of the court was objected to and the sufficiency of the intervention was challenged by the defendant, but the court on motion struck out the objection and the demurrer thereto. The right to intervene is governed by section 599 of the practice act which was adopted *verbatim* from the California statute. The intervener, Henry K. Mitchell, had no such interest in the matter in litigation that he would either gain or lose by the direct legal operation and effect of the judgment which might be rendered in the suit between the original parties.

II. The notice, the exclusion of which the intervener complains of, in the second specification of error, included a number of mining claims, among others the Sam Tilden, and, so far as any issues in this case were or might be affected by it, it was merely a self-serving declaration and could have no tendency to prove any of the issues in this case. The fact

that a man spreads upon the record a declaration that he is the owner of a mining claim and intends in good faith to work it affords no reason .for permitting him to offer such a declaration in evidence. If this were so, the door would be open to street-corner conversations and hearsay testimony of every kind. The court was clearly correct in excluding the testimony offered.

III. The question asked on cross-examination was not proper, for the reason that it was not cross-examination of anything material which was brought out on the direct examination. The most that could be said in support of the position of the appellant is that the trial court in its discretion might permit the rule as to cross-examination to test the credibility of the witness to be extended so far as to permit the question to be asked. The answer might have been, if it had been permitted, that they abandoned the lease on the advice of their attorney, who appeared for them originally in this action, because it had been decided by the general land office and suggested in a decision of the Supreme Court of the United States that a deputy United States mineral surveyor could not initiate a valid location of mining ground, and that therefore they could relocate the Beehive, because Pardy was a United States deputy surveyor at the time he made his location of it. At any rate, it appears that this was what was done, and the Fannie was relocated on that ground by the witness and his partner, and the intervener as their attorney; when it was decided the plaintiffs had no claim, and they frankly came into court and so stated, the intervener was on hand with the Sam Tilden location. Several grounds are urged as constituting error in the admission of respondent's notice of location of the Beehive.

(a) The appellant's first ground of objection is based on variance on the proof from the allegations of the answer in the the first course stated in the notice of location and a like variance in the last course. These differences or variances in *allegata* and *probata* are trifling and immaterial. The intervener was not misled or surprised and does not even claim that he was. Therefore, he has no cause of complaint. (*Whitman* v. *Shiverick*, 3 Nev. 288; *McNair* v. *Gilbert*, 3 Wend. 344;

*Halleck* v. *Commercial Ins. Co.*, N. J. L. 268; *O'Neill* v. *Newman*, 93 N. W. 1064; see, also, numerous cases in 39 Cent. Dig, tit. Pleading, sec. 1338.) Appellant cites 11 Am. & Eng. Ency. Law, 2d ed., to the effect that a variance in matters of description is fatal. The text and the cases cited, so far as we are at present able to read them, refer to "description" in the broad sense (more accurately "descriptive"), and not in the sense appellant seeks to apply the rule he invokes. It will be noted that nearly all of the citations are of criminal cases, and it will be found that the point arose with reference to the allegations of the indictment, concerning which, of course, the rule is very strict. It is not contended that the description of the location certificate as a probative document varied in the allegation and the proof, or that the intervener was surprised or misled in the slightest degree, and as a matter of fact he was not. The variance was immaterial and harmless. See the context of the intervener's own citation: 11 Am. & Eng. Ency. Law, 531–533.

(*b*) This objection is based on the claim that the notice failed to comply with the law in certain particulars required to be stated to constitute a valid notice to be recorded. The first and conclusive answer to this objection, and those following, is that the notice was admissible to show the nature of defendant's possession and as title or color of title "without regard to whether it was sufficient under the mining statute." (*Jones* v. *Prospect Mountain Tunnel Co.*, 21 Nev. 339, 352; *Patchen* v. *Keeley*, 19 Nev. 404, 414.) The proof was conclusive, and the jury found that the defendant was in open and notorious possession of the property from the time of its location. An essential element of the defendant's pleas of the statute of limitations of two and five years was the nature of his claim—his title or color, and whether adverse to the intervener and every one else. Of these facts the notice or certificate of location, though it may have been defective under the mining statutes, was material evidence and the best evidence; it was therefore admissible and it has been so held in the cases referred to. Further, it is not contended the notice was insufficient as a notice of location under the federal statutes (section 2324), or under the state statute (Comp. Laws, 208).

The proof was undisputed and the jury found that the intervener's grantor, Hartnett, had full knowledge of the Beehive, its corners, its boundaries and its mineral discovery and production, and that he acquiesced therein. The claim was properly staked and marked. The recording of the location certificate was therefore essential. (*Ford* v. *Campbell*, 29 Nev. 578; *Zerres* v. *Vanina*, 134 Fed. 618.)

(*c*) The further ground is urged that "there was no ore or vein discovered by the defendant in his alleged discovery at the time of or prior or subsequent to the pretended location."

(*d*) The nonparallelism of the lines does not invalidate the location. The requirement of section 2320 of the United States Revised Statutes is directory only, and the sole penalty suffered by the locator is the loss of extralateral rights. (Morrison, Mining Rights, 13th ed. pp. 171, 172, and cases cited; Lindley on Mines, sec. 365.) At any rate, as to the intervener, the question need not be considered. The defendant Pardy was in possession, and as to the intervener that was sufficient. He "was not obliged to prove a valid location." Intervener was not in position to assail defendant's title. It was no answer to defendant's proof of possession to say that the title was in the government, or a third person, and not in defendant. (*Patchen* v. *Keeley*, 19 Nev. 404, 414; *Golden Fleece Co.* v. *Cable Con. Co.*, 12 Nev. 312, 321.)

*Henry K. Mitchell, in pro. per.*, for Appellant, in reply:

I. In the case of *Hopkins* v. *Noyes*, 4 Mont. 550, 2 Pac. 280, the court says: "Possession within a mining district to be protected, or to give validity to a title, must be in pursuance of the law and the local rules and regulations. It must stand upon the law and be the result of a compliance therewith. Possession without a location carries no title. Possession under a location that has become dead by reason of nonrepresentation, or a failure to comply with the local rules and customs, is equivalent to possession with no location at all. * * * Possessory titles must be supported by proof, a compliance with the law that gives the right to and sustains the possession." The statutes of Nevada and Montana in force at the time of making the above decision are almost

*verbatim*. (Snyder on Mines, appendix B, p. 1295.) Occupancy and possession are synonymous—exploration implies occupancy or possession. If under the Revised Statutes, section 2319, defendant could not occupy the claim without a compliance with the mining rules and regulations, he certainly can claim no right of possession without such compliance. The case of *Ford* v. *Campbell*, 29 Nev. 578, is decisive of several principles contended for by appellant herein.

By the Court, NORCROSS, C. J.:

This action concerns the title to a certain piece of mining ground on Prospect Mountain in the Eureka Mining District, Eureka County, Nevada. The ground in question appears to have been embraced within the several mining claims following, named in the order of their location: Grindstone, Sam Tilden, Beehive, and Fannie. Plaintiffs instituted this action October 13, 1906, basing their right to recover upon the Fannie location. Prior to making this last-named location, the plaintiffs had been lessees of the said John Pardy, deceased, who was an original defendant, and who died subsequent to the rendition of judgment in the action. Plaintiffs based their right to recover upon the Fannie location upon the theory that the Beehive location was void because of the fact that its locator, the said John Pardy, was at the time of making the location a deputy United States mineral surveyor. After the defendants had filed their answer to plaintiffs' complaint, proceedings were suspended in the court below for the reason that the question of the right of a deputy mineral surveyor to locate a mining claim was then pending in this court in the case of *Hand* v. *Cook*, 29 Nev. 518. The decision of this court in the *Hand* v. *Cook* case, *supra*, having been adverse to plaintiffs' contention, plaintiffs appeared in court in person and dismissed their complaint. Prior to the dismissal of the complaint, Henry K. Mitchell, who had been the attorney for the plaintiffs, was granted permission to intervene and filed a complaint in intervention, claiming title to the ground in controversy by virtue of a deed, dated March 15, 1907, for the Sam Tilden claim from one Maurice Hartnett. The defendants' objection to the right of the said Henry K. Mitchell to

intervene in the action having been overruled, defendants filed an answer and subsequently an amended answer to the said intervener's complaint in intervention.

The case was tried upon the issues raised upon the complaint in intervention and the amended answer thereto. The defendant J. H. Byerly having no interest in the controversy other than that of lessee of the defendant John Pardy, and his lease having expired prior to the entry of judgment in the case, judgment was entered in favor of the defendant Pardy. The Sam Tilden location was made by the said Maurice Hartnett March 9, 1889. The Beehive location was made by the defendant Pardy July 27, 1899, and covers the major portion of the Sam Tilden claim. These two locations are the only ones directly involved in the action. The issues as made by the defendants were a denial of the allegations of the intervener; the allegation of the location of the Beehive; the possession thereunder continuously from the time of such location; that such possession was open, adverse, and notorious; the forfeiture of the Sam Tilden claim; and, also, a special plea of the statute of limitations of both two and five years. The case was tried by the court; but the court, deeming certain equitable features to be involved in the case, impaneled a jury in an advisory capacity. General and special issues were submitted to the jury, which were found in favor of the defendant Pardy. The findings were adopted by the court, and a decision and judgment entered in favor of said defendant. From the judgment, and from an order denying the intervener's motion for a new trial, the intervener has appealed.

The motion for new trial was based upon the grounds: (1) Insufficiency of the evidence to justify the decision of the court, and that such decision is contrary to the evidence, and that the same is against law. (2) Errors in law occurring at the trial and excepted to by the intervener.

A preliminary question is raised by counsel for respondents which goes to the jurisdiction of the lower court to entertain the complaint in intervention. We need not, we think, determine whether the intervener had such an interest in the result of the suit between the original plaintiffs and defendants as would entitle him to intervene, or whether the situation pre-

sented at that time falls within the rule laid down in the case of *Harlan* v. *Eureka Mining Co.*, 10 Nev. 92, as contended. Had the plaintiffs remained in the suit and the issues raised upon the plaintiffs' complaint and the defendants' answer been tried and determined, the position of counsel for respondents might be correct. After the plaintiffs dismissed their complaint, the case went to trial between the intervener and the defendants upon the issues raised by their respective pleadings. The intervener became virtually the plaintiff in the case. At the time the plaintiffs dismissed the complaint, defendants did not ask to have the entire proceedings dismissed, but, without further objection, proceeded to trial upon the issues raised by their answer to the intervener's complaint. We think, under the state of facts, the court had jurisdiction of the parties as well as the subject-matter.

The statement on motion for new trial presents nine assignments of error, which we will consider in order.

Error is assigned in admitting in evidence the laws or regulations of the Eureka Mining District. These regulations were offered in evidence in support of defendants' objection to the admission in evidence of the notice of location of the Sam Tilden claim; defendants contending that such notice was not in accordance with the district regulations. The objection to the admission of the notice in evidence was overruled and the notice admitted. Even conceding, for the purposes of this case, that those regulations were erroneously admitted, appellant was in no way injured thereby.

Error is assigned in the ruling of the court excluding as evidence a certain notice recorded by the said Maurice Hartnett, December 19, 1893, in the office of the county recorder of Eureka County, which notice was filed in pursuance of the act of Congress relieving locators from the necessity of doing annual labor for the year 1893. This notice was offered for the purpose of proving an act of ownership upon the part of intervener's grantor at the time of filing such notice. As this notice was filed nearly six years prior to the date of the initiation of defendants' claim, and as they have not questioned the ownership of the Sam Tilden claim by intervener's grantor prior to the date of the location of the Beehive claim,

we are unable to see wherein this proposed evidence was material and wherein its rejection could possibly be prejudicial error.

Error is assigned in the ruling of the court excluding the evidence of Maurice Hartnett offered for the purpose of proving that the Sam Tilden claim was one of a group of claims known as and called the Excelsior Group. It is difficult to understand the making of this assignment, in view of the fact that the record upon appeal contains the following from the testimony of the said Maurice Hartnett: "Maurice Hartnett then testified: 'That the property conveyed was and is the Sam Tilden in suit and constitutes one of the Excelsior Group which he conveyed by the deed offered.'" The deed which was admitted in evidence over the defendants' objection also described the claim as one of the Excelsior Group.

Error is assigned in overruling intervener's objection to the testimony of W. C. Stewart and A. R. Gibson relating to a lease from the defendant Pardy. This evidence, we think, was clearly admissible as showing or tending to show possession by Pardy and work done or being done upon the claim in question. While, at the time this evidence was offered, defendant Pardy had not offered his proof of location of the Beehive claim, this evidence was subsequently supplied. The court has the discretion to admit evidence out of the regular order, subject to the supplying of other evidence later which will establish its relevancy or materiality.

Error is assigned in sustaining the objection interposed by the defendants to a question asked the witness A. R. Gibson to explain how or why he and his partner gave up their lease. The witness had previously testified that he and his partner, Stewart, had given up their lease. Conceding, without deciding, that the question was permissible in cross-examination, we are unable to see wherein the exclusion of this testimony could possibly have been prejudicial to the intervener, as it was not material to the issues presented.

Error is assigned in admitting as evidence defendants' notice of location of the Beehive mining claim. A notice of location of a mining claim is not required to be recorded under the statutes of this state. (Comp. Laws, 208, *et seq.*) Comp. Laws,

210, provides for the filing of a certificate of location which must contain certain specified statements. A certificate complying with the provisions of this section is made "*prima facie* evidence of the facts therein stated." The section further provides: "Any record of the location of a lode mining claim which does not contain all the requirements named in this section shall be void." The notice admitted in evidence does not answer the requirements of a certificate of location, in that it fails to contain at least the fifth requirement: "The dimensions and location of the discovery shaft, or its equivalent, sunk upon the claim." The notice, we think, was admissible as evidence of an act of location and in support of defendants' claim of adverse possession, and, also, for purposes of explaining the testimony of defendant Pardy and other witnesses. Defendant did not rely on it as a certificate of location or offer it in evidence as a certificate. (*Jones* v. *Prospect Tunnel Co.*, 21 Nev. 352.) The filing of a defective certificate of location or the failure to file any certificate does not invalidate the claim. We had occasion to go into this question very fully in the case of *Ford* v. *Campbell*, 29 Nev. 578. In that case we held that the failure to file a certificate of location in accordance with the provisions of the statute did not render a location void, but that the effect of failure to file such certificate was to impose upon the claim owner the burden of proof to establish by other evidence that a valid location had in fact been made. In this case defendants, we think, established, independent of record proof, the essential requirements of a valid location of the Beehive claim.

A further objection to the admission in evidence of the notice of location of the Beehive claim is based upon "a variance between the *allegata* and *probata*, in this, that the answer alleges its first course to be at a point commencing south $30\frac{3}{4}$ degrees east, 292 feet, from the southwest corner of Eldorado patent No. 140, and its last course to be thence south $30\frac{3}{4}$ degrees east, 840 feet, while the notice offered claims in each course above stated $32\frac{1}{2}$ degrees east." We think this objection is without merit. Notices of location are not required to be strictly exact, and they are not controlling. The courses and distances described in the notice yield to the monuments

erected on the ground. (1 Lindley on Mines, secs. 381, 382; *Book* v. *Justice M. Co.*, 58 Fed. 106.)

Error is assigned in the finding made by the trial court that a vein, lode, or rock in place was discovered at the time of the Beehive location or in sinking the discovery shaft. It may be seriously questioned whether the evidence shows a discovery in the so-called "discovery shaft." The evidence, however, shows clearly that the defendant Pardy subsequently found valuable ore in other workings upon the claim, some of which ore was extracted and shipped and was of a value in excess of $100 per ton. It is a reasonable deduction from the evidence that the work done in other parts of the claim where ore was unquestionably discovered was more than the equivalent of that required for a discovery shaft. Conceding, without deciding, that this finding was erroneous, it does not, we think, affect the result in this case.

The last assignment of error goes to the sufficiency of the evidence to justify the decision and judgment. The defendant Pardy, after testifying that he located the Beehive claim at the time stated in the notice, and that he built posts or monuments at the corners described, further testified: "I did $100 worth of work on the Beehive mine for the year 1899, after my location of the claim, and each year since, up to the present time, I have done $100 worth of work on the Beehive. When I located the Beehive mine, I was familar with the ground on which it is located and with the surrounding ground. The ground I located was unoccupied and open to location as mining ground. At the time of my locating it, there had not been any work done on the ground located as the Beehive for a period of at least eight or ten years. I examined the ground and ascertained that the annual labor had not been performed on it, since the time of my location of the Beehive mine. I have had the open and actual possession of the ground against Maurice Hartnett and his grantee as alleged, H. K. Mitchell, and against all others up to the commencement of this suit. Maurice Hartnett, nor any one else, ever informed me I had located ground of his. Maurice Hartnett knew I was working the ground, and did not interfere with my so doing. For over

seven years Maurice Hartnett saw me work the ground, doing the annual labor and other work, and did not prevent me from doing the same. He never told me he owned the ground. When I made the location of the Beehive, there was what I call ore or mineral-bearing matter at the location point or discovery shaft. The mine was located on a zone of mineral-bearing lime. That all the limestone on that side of the Prospect Mountain be considered the lode or ledge of mineral-bearing rock." The witness further testified: "That, after said location of said Beehive, I took a considerable quantity of paying ore from the said Beehive mine."

A. R. Gibson, a witness for defendant Pardy, testified that he, together with W. C. Stewart, had leased the Beehive claim from the defendant Pardy and had extracted ore therefrom and shipped the same to reduction works; that the said Maurice Hartnett was aware of the work being done by them upon the Beehive claim, but made no claim whatever that he owned the property. The witness further testified that he had been familiar with the property for a number of years, and that the annual labor was not done on the ground for many years until the Pardy location was made.

W. C. Stewart testified that he was associated with the witness A. R. Gibson in a lease of the Beehive mine from the defendant Pardy; "that Maurice Hartnett knew of the said lease and of the work the said Stewart and Gibson were doing on the said Beehive mine; and that the said Hartnett never objected thereto, but, on the contrary, lent them some tools to work with on the said mine."

The contention made by counsel for appellant that the proof shows that the end lines of the Beehive claim are not parallel is of no force in this case, as such a fact, if it be a fact, does not make the location invalid, but could only affect extralateral rights, which are not involved in this case. (Section 365, Lindley on Mines.)

There is evidence in this case that, at the time of the location of the Beehive claim, the Sam Tilden claim was subject to forfeiture for failure to do the annual labor required; that, since the location of the Beehive claim, the defendant Pardy

has been in the open, notorious, and adverse possession thereof against the intervener and his grantor and against all the world.

The judgment and order appealed from are affirmed.

SWEENEY, J.: I concur.

TALBOT, J., concurring:

I concur in the affirmance of the judgment of the district court in favor of the defendants for reasons not relating to the invalidity of the location of the Beehive by John Pardy at the time that he was United States deputy mineral surveyor. If the action as between the intervener, who is in the position of a plaintiff, and the defendants, who are the only parties to this appeal, depended upon whether such a surveyor could make a valid location of a mining claim, it might be proper for this court to frankly reverse its decision and correct its conclusion in *Hand* v. *Cook*, 29 Nev. 518, because the federal courts, acting within the jurisdiction vested in them for finally construing federal enactments, as well as the United States land office and the Supreme Court of Utah, have placed an interpretation upon the act of Congress the reverse of that given by a majority of the members of this court in that case.

In *Waskey* v. *Hammer*, 170 Fed. 36, 95 C. C. A. 310, the United States Circuit Court of Appeals, in an opinion by Judge Ross, concurred in by Judges Gilbert and Morrow, after citing section 452, U. S. Rev. Stats. (U. S. Comp. Stats. 1901, p. 257), which provides that "the officers, clerks and employees in the general land office are prohibited from directly or indirectly purchasing or becoming interested in the purchase of any of the public lands," and stating that the later rulings in the land department were to the effect that this statute is applicable to a deputy surveyor said: "In the case of *Hand* v. *Cook*, 29 Nev. 518, a majority of the Supreme Court of Nevada held that the statute in question did not apply to a deputy mineral surveyor; but the reverse was held by the Supreme Court of Utah in the case of *Lavagnino* v. *Uhlig*, 26 Utah, 1, 71 Pac. 1046, 99 Am. St. Rep. 808. It will not do for a court to take a strained and narrow view of the language employed by Congress in its enactments, but rather give such a construction as

will carry into effect its obvious intent. We entertain no doubt that a deputy mineral surveyor is an employee 'in the general land office,' within the meaning of the statute. * * * Nor do we see that there is any much clearer way to prohibit an act than to say expressly that it is prohibited. That Congress did in the section in question.

"In the case of *Prosser* v. *Finn*, 208 U. S. 67, 28 Sup. Ct. 225, 52 L. Ed. 392, the supreme court held that section 452 applied to a special agent of the land department who had made an entry under the timber culture act (act March 3, 1873, c. 277, 17 Stat. 605, as amended by act March 13, 1874, c. 55, 18 Stat. 21). The court said: 'The difficulty in the way of any relief being granted to the plaintiff arises from the statute prohibiting any officer, clerk, or employee in the general land office, directly or indirectly, from purchasing or becoming interested in the purchase of any of the public land. That a special agent of the general land office is an employee of that office is, we think, too clear to admit of serious doubt. * * * It is not clear, from any document or decision to which our attention has been called, what is the scope of the duties of a special agent of the land office, but the existence of that office or position has long been recognized. Suffice it to say that they have official connection with the general land office, and are under its supervision and control with respect to the administration of the public lands. (*Wells* v. *Nickles*, 104 U. S. 444, 26 L. Ed. 825; 1 Land Dec. Dep. Int. 608, 620; Instructions to Special Timber Agents, 2 Land Dec. Dep. Int. 814, 819–822, 827, 828, 832; Circular of Instructions, 12 Land Dec. Dep. Int. 499.) They are in every essential sense employees in the general land office. They are none the less so, even if it be true, as suggested by the learned counsel for the plaintiff, that they have nothing to do with the survey and sale of the public lands, or with the investigation of applicacations for patents, or with hearings before registers and receivers. Being employees in the general land office, it is not for the court, in defiance of the explicit words of the statute, to exempt them from its prohibition. Congress has said, without qualification, that employees in the general land office shall not, while in the service of that office, purchase or

become interested in the purchase, directly or indirectly, of public lands.'"

In my opinion, these decisions of the highest federal courts construing this act of Congress are conclusive until or unless the Supreme Court of the United States reverses the case of *Waskey* v. *Hammer*, which is reported to be pending before that tribunal at this time on a writ of *certiorari*, or unless it reverses its own decision in *Prosser* v. *Finn*, or makes an improbable distinction by holding that a United States deputy mineral surveyor is not an officer or employee of the general land office when a special agent is held to be such an employee.

It is shown by the evidence, and apparently conceded, that John Pardy posted the notices and did the work regularly required for making the location, and did the annual work every year on the Beehive. Assuming that the location of this claim was void because John Pardy was a deputy mineral surveyor at the time it was made, there are obstacles which would prevent a recovery by the intervener.

As to the Sam Tilden claim, on which he relied as having been located ten years before the Beehive, it appeared that notices of location had been posted and recorded; but the jury found that the location work required by the rules and regulations of the mining district and the annual work required by the laws of Congress, had not been performed. If the Sam Tilden had been properly located, it might be said that, if its locator remained in possession and continued to claim the ground, he could hold it without doing the annual work as against any one who failed to make a valid new location. But there is evidence supporting the plea of the statutes of limitations for actions for mining claims and for real estate interposed by defendants and tending to show an abandonment of the ground by the locator of the Sam Tilden and an estoppel against him, in addition to any mere failure to do the annual work which might result in forfeiture upon the making of a new valid location. The testimony of the locator of the Sam Tilden that he had done the annual work was contradicted by witnesses who asserted that no work had been done on the ground for eight or ten years before the location of the Beehive. The jury found the special issues in

favor of the defendants, and the findings were approved by the court.

In the statement, which is to be commended for its conciseness while apparently fully and clearly presenting the issues raised, evidence indicating abandonment of the ground and acts which would estop the claimant under the Sam Tilden location from asserting a right to it is apparently uncontradicted. There was testimony that the locator of the Beehive had done the work for seven years with the knowledge of the locator of the Sam Tilden, who did not object or tell him that he owned the ground; that the locator of the Sam Tilden knew that the lessees were working on the Beehive and never made any objection, but, on the contrary, loaned them tools to work with and procured a tape-line and helped them to measure off the land, and never told them that he owned or claimed the ground or not to work or trespass there; and that he said he hoped they would get ore and that he would not bother about it.

In view of the weakness of the intervener's claim under these circumstances, as apparently found by the jury, and considering the finding that the necessary location work had not been done on the Sam Tilden at the time the notices for its location were filed and recorded in the year 1889, that the annual work had not been done for so many years prior to the location of the Beehive in 1899, and that no objection had been made by the locator of the Sam Tilden to the work being done on the Beehive for seven years after its location, and that, instead of objection being made, assistance and encouragement were given by him to the lessees working on the Beehive, and the evidence of acts relating to an estoppel and a bar under the statute of limitations, enough appears to sustain the judgment, regardless of any question of the insufficiency or invalidity of the location of the Beehive.